**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 17, 2004**

PATRICIA MYRA CORLEY,

    Plaintiff-Appellee,

v

No. 119773

DETROIT BOARD OF EDUCATION,
JOSEPH SMITH, and BARBARA FINCH,
jointly and severally

    Defendants-Appellant.

_____

**PER CURIAM**

In this sexual harassment action, plaintiff claims to have suffered an adverse employment action as a consequence of a prior romantic relationship with one of the defendants, MCL 37.2103(i)(ii), and a hostile work environment, MCL 37.2103(i)(iii). We conclude that plaintiff's complaint does not allege facts sufficient to show sexual harassment under either theory and, therefore, fails as a matter of law. We reverse the Court of Appeals decision pertaining to plaintiff's sexual harassment claims and reinstate the trial court's order granting summary disposition for

defendants.

## I. Facts and Procedural History

Plaintiff and defendant Joseph Smith were employed by the Detroit Board of Education to work in its adult education program at the Golightly Vocational Center. Plaintiff was employed part-time as a counselor,[1] and defendant Smith was her supervisor. During the course of their employment, plaintiff and Smith became romantically involved in a relationship that lasted three or four years. The relationship ended when Smith started dating another employee, defendant Barbara Finch. Plaintiff alleges that after Smith and Finch became involved, defendant Smith repeatedly threatened plaintiff with adverse employment action if she said or did anything that interfered with his relationship with Finch.[2] Plaintiff also alleges that Finch taunted, embarrassed, and humiliated her by causing plaintiff's work station to be moved and by engaging in "catty" conversations with others that were about plaintiff and intended to be overheard by her. According to plaintiff, the alleged harassment culminated when she was

---

[1] Plaintiff simultaneously held full-time employment with the Detroit Board of Education. The facts relevant to this case involve only plaintiff's part-time employment at Golightly.

discharged at the conclusion of the 1995-1996 school year.

Plaintiff filed suit, claiming sexual harassment, breach of contract, and intentional infliction of emotional distress. Regarding the sexual harassment claim, plaintiff alleged that she was subjected to two species of harassment prohibited by the Michigan Civil Rights Act: a hostile working environment, MCL 37.2103(i)(iii), and quid pro quo sexual harassment, MCL 37.2103(i)(ii). Pursuant to MCR 2.116(C)(8) and (10), the circuit court granted defendants' motion for summary disposition, ruling that plaintiff failed to state a claim on which relief could be granted and that there was no genuine issue of material fact.

The Court of Appeals affirmed in part and reversed in part.[3] The panel reversed the trial court's order granting summary disposition regarding the sexual harassment claims, reasoning that the alleged persistent and hostile communications could reasonably be considered communications of a sexual nature because defendants "disliked" plaintiff's "continued presence in the workplace as Smith's former

---

[2] Defendants Smith and Finch have since married.

[3] The Court of Appeals affirmed summary disposition regarding breach of contract and intentional infliction of emotional distress. 246 Mich App 15, 25-26; 632 NW2d 147 (2001). Plaintiff did not appeal those rulings.

paramour."[4]   Furthermore, the Court determined that plaintiff submitted sufficient evidence of quid pro quo sexual harassment because she suffered adverse employment actions as a result of "her 'submission' to Smith's prior" romantic overtures.[5]   The panel additionally reasoned that the alleged threats, offensive remarks, and adverse working conditions established sufficient evidence of a hostile work environment.   Defendants seek leave to appeal to this Court.

## II.   Standard of Review

This Court reviews de novo the resolution of a summary disposition motion.[6]

A motion "under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone."[7]   "The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted.   The motion should be granted if no factual development could possibly justify recovery."[8]

---

[4] 246 Mich App 22.

[5] 246 Mich App 23.

[6] *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002).

[7] *Mack v Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002).

[8] *Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001).

4

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint."[9]  In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties.  Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.[10]

### III.  Analysis

We turn initially to whether plaintiff alleges facts sufficient under MCR 2.116(C)(10) to establish a claim of sexual harassment actionable under either a quid pro quo theory or a hostile work environment theory, MCL 37.2103(i)(ii), (iii).

"Sexual harassment" is defined in MCL 37.2103(i) as:

> [U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> * * *
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used

---

[9] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

[10] *Id*. at 118-120.

as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

Thus, as a threshold matter, plaintiff must allege facts showing that she was subjected to "unwelcome sexual advances," "requests for sexual favors," or "conduct or communication of a sexual nature" before she can establish actionable sexual harassment under a hostile work environment theory or a quid pro quo theory. MCL 37.2103(i).

Plaintiff does not contend that defendants made either unwelcome sexual advances or requests for sexual favors. We thus turn to the third element of MCL 37.2103(i) to determine if she was subjected to "conduct or communication of a sexual nature." "Sexual nature" is not defined in the statute. Where a term is not defined in the statute, we will review its ordinary dictionary meaning for guidance.[11] "Sexual" is defined, in part, as "of or pertaining to sex"

or "occurring between or involving the sexes: *sexual relations.*"[12] "Nature" is defined as a "native or inherent characteristic."[13] Utilizing these two commonly understood definitions, we conclude that actionable sexual harassment requires conduct or communication that *inherently* pertains to sex.[14]

The conduct and communication alleged by plaintiff do not meet this definition. Plaintiff contends that defendant Smith repeatedly warned plaintiff not to interfere with his relationship with Finch and threatened her with consequences if she did. The Court of Appeals, viewing the evidence in a light most favorable to plaintiff, concluded that the threats could constitute unwelcome sexual communications because they stemmed from Smith's past intimate relationship with plaintiff. We disagree.

After their intimate relationship ended, their working relationship became difficult, but defendant Smith's alleged

---

[11] *Cox v Bd of Hosp Managers*, 467 Mich 1, 18; 651 NW2d 356 (2002).

[12] *Random House Webster's College Dictionary* (1990).

[13] *Id.*

[14] See *Haynie v Dep't of State Police*, 468 Mich 302, 312; 664 NW2d 129 (2003); see also *Barrett v Kirtland Community College*, 245 Mich App 306, 321; 628 NW2d 63 (2001)

threats that he would fire plaintiff if she interfered with his new relationship were not inherently sexual in nature. Verbal or physical conduct or communication that is not sexual in nature is not sexual harassment.[15]  For this reason, we conclude that plaintiff cannot meet the threshold requirement to establish either a quid pro quo sexual harassment claim or hostile work environment sexual harassment claim against defendant Smith.

Regarding defendant Finch, plaintiff alleges that Finch contributed to a hostile work environment by engaging in "catty" conversations about plaintiff and by causing plaintiff's work station to be relocated.  As discussed above, plaintiff must establish that the asserted conduct or communication were of a *sexual nature*.  That is, that Finch's conduct or communication inherently pertained to sex.  Here, the asserted communication by Finch conveyed nothing more than Finch's personal animosity towards plaintiff.  MCL 37.2103(i) does not forbid the communication of enmity between romantic rivals, even if the predicate for the dislike is sexual competition, as long as the conduct or communication is not inherently sexual.  In summary, what

(reiterating that the Civil Rights Act is not so broad as to bar all conduct that is in any way related to sex).

[15] *Haynie, supra* at 310.

8

may have been sexual in this case did not involve harassment, while what did involve harassment was not sexual. It cannot be said by any understanding of the language of MCL 37.2103 that plaintiff was subject to "sexual harassment." Thus, we conclude that plaintiff has failed to meet the threshold requirement to establish sexual harassment by Finch because this connection between sex and the alleged conduct and communication is missing.[16]

## IV. Conclusion

Plaintiff's claim fails as a matter of law because she has not established evidence of conduct or communication of a "sexual nature" as required to support a claim of sexual harassment. Therefore, we reverse the decision of the Court of Appeals with respect to plaintiff's sexual harassment claims and reinstate the circuit court's order granting summary disposition for defendants under MCR 2.116(C)(10).

Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

---

[16] Because plaintiff has failed to plead sufficient facts under MCR 2.116(C)(10), we need not decide the legal sufficiency of plaintiff's complaint under MCR 2.116(C)(8).

9

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

PATRICIA MYRA CORLEY,

    Plaintiff-Appellee,

v                                  No. 119773

DETROIT BOARD OF EDUCATION,
JOSEPH SMITH, and BARBARA FINCH,
jointly and severally

    Defendants-Appellants.

_____

CAVANAGH, J. (*dissenting*).

    I respectfully dissent. While the majority sees fit to dispose of this case by an opinion per curiam after a perfunctory fifteen minutes of oral argument on the application, I believe that defendant's application for leave should be granted and this case should be decided only after full briefing and argument. The Court of Appeals opinion in this case is published. Further, the issue presented is jurisprudentially significant and is more closely drawn than the majority would have the reader believe.

    I am unclear whether the result reached by the majority is correct. Additionally, I am troubled by the majority's

quick resort to the dictionary, without any consideration of the purpose or principles underlying Michigan's Civil Rights Act and without any examination of the federal cases that have considered this issue. Therefore, I must respectfully dissent because this Court, and the parties, would be better served by granting defendant's application for leave.

Michael F. Cavanagh
Marilyn Kelly

2