LaFONTAINE SALINE INC v CHRYSLER GROUP LLC

Docket No. 307148. Submitted November 14, 2012, at Detroit. Decided November 27, 2012, at 9:10 a.m. Leave to appeal sought.

LaFontaine Saline Inc., an authorized dealer of Chrysler motor vehicles, brought an action for declaratory relief in the Washtenaw Circuit Court against Chrysler Group LLC and IHS Automotive Group, LLC, under the motor vehicle dealers act (MVDA), MCL 445.1561 *et seq.*, after receiving notice that Chrysler and IHS intended to enter into a dealer agreement that would allow IHS to establish a Dodge dealership within nine miles of plaintiff's dealership if IHS built a facility that met Chrysler's specifications, as set forth in a letter of intent. Defendants moved for summary disposition, arguing that plaintiff lacked standing to bring an action under the version of the MVDA in effect when the letter of intent was signed because the proposed IHS dealership was not located within six miles of plaintiff's dealership, the then applicable radius giving rise to a cause of action under MCL 445.1576(3). The court, David S. Swartz, J., entered an order granting defendant's motion for summary disposition under MCR 2.116(C)(10), concluding that the letter of intent to enter into a dealer agreement between Chrysler and IHS itself constituted a dealer agreement, which rendered the six-mile threshold applicable. The trial court denied plaintiff's motion for reconsideration of the order in part on the ground that, because defendants had not yet executed a sales and service agreement with respect to the Dodge vehicle line, plaintiff's claim was not ripe for adjudication. Plaintiff appealed.

The Court of Appeals *held*:

1. The court erred by applying the definition of "relevant market area" in effect when defendants' letter of intent was signed when granting summary disposition because defendants' letter of intent did not constitute a dealer agreement. MCL 445.1576(2) requires a manufacturer or distributor that seeks to enter into a dealer agreement that establishes a new-motor-vehicle dealer to first give written notice of this intention to each new-motor-vehicle dealer of the same line make in the relevant market area. Under MCL 445.1576(3), within 30 days after receiving this notice,

a dealer may bring a declaratory judgment action to determine whether good cause exists for the establishing or relocating of a proposed new-motor-vehicle dealer. Hence, an existing like-line dealer does not have a cause of action under the MVDA to challenge a proposed dealer agreement unless the existing dealer is located within the relevant market area of the proposed new vehicle line dealer. On February 10, 2010, Chrysler sent IHS a letter of intent stating that Chrysler would accept IHS's offer to enter into a Dodge sales and service agreement with IHS if IHS provided a new facility for the exclusive display, sales, and service of Dodge, Chrysler, and Jeep vehicle lines that complied with the provisions of the letter of intent. At the time, "relevant market area" was defined as the area within a radius of six miles of the intended site of the proposed or relocated dealer, but effective August 4, 2010, the statute was amended to expand the relevant market area to the area within a radius of nine miles. IHS is located more than six miles, but within nine miles, of plaintiff. When the letter of intent was signed, MCL 445.1562(2) defined "dealer agreement" as an agreement or contract that purports to establish the legal rights and obligations of the parties to the agreement or contract with regard to the purchase and sale of new motor vehicles and accessories for motor vehicles. The parties' letter of intent did not purport to establish the legal rights and obligations regarding the sale of new motor vehicles and accessories but rather concerned the construction of a new facility; therefore, the letter of intent was not a dealer agreement. Because any dealer agreement between Chrysler and IHS will necessarily be executed after 2010 PA 139 took effect, plaintiff was located within the "relevant market area" and plaintiff could maintain an action under MCL 445.1576(3) to determine whether good cause exists to establish the proposed Dodge vehicle line at IHS. Therefore, the court erred by granting summary disposition.

2. The court erred by concluding that plaintiff's claim was not ripe for adjudication. A claim is not ripe if it rests upon contingent future events that may not occur as anticipated or may not occur at all, and there must be a genuine case or controversy between the parties in which there is a real, not a hypothetical, dispute. In this case, the genuine case or controversy was whether good cause existed for establishing the Dodge vehicle line at IHS. Plaintiff's cause of action was specifically provided for under MCL 445.1576, which requires a manufacturer to provide notice to a like-line dealer of its intent to establish a new vehicle line in the relevant market area before entering into a dealer agreement and allows a like-line dealer to commence a declaratory judgment action to determine whether good cause exists for establishing the proposed

vehicle line. Because plaintiff, a Dodge dealer, was located within the nine-mile relevant market area where Chrysler intended to establish the Dodge vehicle line at IHS, and because plaintiff received notice that Chrysler intended to award the Dodge line to IHS, plaintiff had standing to file a declaratory action to determine whether good cause existed to establish the Dodge vehicle line at IHS. Whether good cause existed was not contingent on future events that may not occur.

Reversed and remanded.

ACTIONS — DECLARATORY ACTIONS — RIPENESS — MOTOR VEHICLE DEALERS ACT — DEALER AGREEMENTS — NEW MOTOR VEHICLE DEALERS IN AREA ALREADY SERVED.

A claim is not ripe if it rests upon contingent future events that may not occur as anticipated or may not occur at all; for a claim to be ripe there must be a genuine case or controversy between the parties in which there is a real rather than a hypothetical dispute; a motor vehicle dealer may file a declaratory action under MCL 445.1576(3) to determine whether there is good cause to establish a new motor vehicle dealer in the relevant market area where the same vehicle line make is represented after receiving notice that a motor vehicle manufacturer or distributor intends to do so.

*Dawda, Mann, Mulcahy & Sadler, PLC* (by *Suanne Tiberio Trimmer* and *Randal R. Cole*), and *Ward M. Powers* for LaFontaine Saline Inc.

*Dykema Gossett PLLC* (by *Jill M. Wheaton* and *Thomas S. Bishoff*) for Chrysler Group LLC.

*Williams, Williams, Rattner & Plunkett, P.C.* (by *David E. Plunkett* and *Ernest J. Essad, Jr.*), for IHS Automotive Group, LLC.

Before: BORRELLO, P.J., and FITZGERALD and OWENS, JJ.

PER CURIAM. Plaintiff, LaFontaine Saline Inc., an authorized dealer of Chrysler motor vehicles, appeals as of right a September 19, 2011, trial court order granting summary disposition in favor of defendants Chrysler Group LLC and IHS Automotive. Plaintiff filed a com-

plaint for declaratory relief pursuant to MCL 445.1576(3), a subsection of the motor vehicle dealers act (MVDA), MCL 445.1561 *et seq.*, seeking an order prohibiting Chrysler from adding the Dodge vehicle line at IHS, a Chrysler dealer located within the amended definition of "relevant market area" contained in the MVDA. The trial court concluded that the definition of "relevant market area" from a previous version of the statute applied and that plaintiff therefore fell outside the "relevant market area" and did not have standing under MCL 445.1576(3) to challenge the addition of the Dodge vehicle line at IHS. For the reasons set forth in this opinion, we reverse the trial court's order and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is an automobile dealer located in Saline, Michigan. On September 24, 2007, plaintiff and Chrysler executed three separate sales and services agreements (SSAs): a Chrysler SSA, a Jeep SSA, and a Dodge SSA. Under the terms of the SSAs, Chrysler granted plaintiff the nonexclusive right to purchase and resell Chrysler, Dodge, and Jeep vehicles at plaintiff's dealership. The SSAs provided that plaintiff "will actively and effectively sell and promote the retail sale of [Chrysler] vehicles, vehicle parts and accessories in [plaintiff's] Sales Locality." However, the SSAs also provided that the "Sales Locality may be shared with other [Chrysler] dealers of the same line-make as [Chrysler] determines to be appropriate."

Though Chrysler's right to establish other dealers was not limited under the SSAs, it is limited by the MVDA. Specifically, MCL 445.1576(2) provides that "[b]efore a manufacturer or distributor enters into a *dealer agreement* establishing . . . a new motor vehicle dealer within a

relevant market area where the same line make is represented, the manufacturer or distributor shall give written notice to each new motor vehicle dealer of the same line make *in the relevant market area* .... " (Emphasis added.) Upon receipt of this notice, an existing like-line dealer in the relevant market area "may bring a declaratory judgment action ... to determine whether good cause exists for the establishing ... of a proposed new motor vehicle dealer." MCL 445.1576(3). Hence, an existing like-line dealer does not have a cause of action under the MVDA to challenge a proposed dealer agreement unless the existing dealer is located within the "relevant market area" of the proposed new vehicle line dealer.

At the time plaintiff executed the SSAs with Chrysler, the MVDA defined "relevant market area" in pertinent part as follows:

> For a proposed new motor vehicle dealer or a new motor vehicle dealer who plans to relocate his or her place of business in a county having a population which is greater than 25,000, the area within a *radius of 6 miles* of the intended site of the proposed or relocated dealer. [MCL 445.1566(1)(a), as amended by 1983 PA 188 (emphasis added).]

Effective August 4, 2010, the definition of "relevant market area" for counties with a population of more than 150,000 was amended by 2010 PA 139, and now provides in pertinent part:

> In a county that has a population of more than 150,000, the area within a *radius of 9 miles* of the site of the intended place of business of a proposed new vehicle dealer or the intended place of business of a new vehicle dealer that plans to relocate its place of business. [MCL 445.1566(1)(a) (emphasis added).]

It is undisputed that plaintiff is located in a county with a population of more than 150,000 (specifically,

Washtenaw County). IHS is a vehicle dealer located more than six miles, but within nine miles, of plaintiff. On February 2, 2010, before the effective date of 2010 PA 139, IHS and Chrysler entered into a letter of intent agreement (LOI) regarding Chrysler's Dodge vehicle line. The LOI provided that IHS "requested that Chrysler . . . enter into a Dodge Sales and Service Agreement" with IHS. The LOI further provided that Chrysler would accept IHS's offer to enter into an agreement "in its then-customary form" if IHS provided a new facility for the "exclusive display, sales and service of Dodge, Chrysler and Jeep vehicle lines that complies with the provisions of this [LOI]" and if IHS completed "all of the requirements of this LOI within the time periods set forth in this LOI."

The LOI then set forth all the requirements for the facility and stated:

> Completion of all of the requirements of this LOI to [Chrysler's] satisfaction within the time periods specified herein and by the Expiration Date are material terms of this LOI. Failure to complete these requirements within the time periods specified herein will be a material breach of this LOI and [Chrysler] will have the right to terminate this LOI. Furthermore, any obligation of [Chrysler] to enter into [a Dodge Sales and Service Agreement] with You will be void and [Chrysler] will have no further obligation to You nor any liability to You.

Sometime in 2010, plaintiff learned that Chrysler intended to award the Dodge vehicle line to IHS. Thereafter, on September 3, 2010, plaintiff sent a letter to Chrysler advising it that IHS was located within the new nine-mile relevant market area of plaintiff. The letter further stated that "[plaintiff] . . . is protesting any additional Chrysler Dodge Jeep Ram franchise in our market area of responsibility." Chrysler responded

in a letter to plaintiff that Chrysler "intend[ed] to approve the establishment of a Dodge car and truck vehicle line" at IHS.

On December 9, 2010, plaintiff filed a complaint for declaratory relief requesting that the trial court enter an order precluding Chrysler from awarding the Dodge vehicle line to IHS. Chrysler and IHS moved for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that because the LOI constituted a "dealer agreement" that was effectuated before the 2010 statutory amendment, the six-mile relevant market area governed whether plaintiff had standing to challenge the new vehicle line. Specifically, defendants essentially argued that, because IHS was not located within six miles of plaintiff, plaintiff lacked standing to challenge the proposed action under MCL 445.1576(3). Chrysler and IHS also argued that the amended nine-mile relevant market area did not have retroactive effect.

Plaintiff responded, arguing that the 2010 statutory amendments applied in the instant case and that the nine-mile relevant market area therefore governed; hence, under plaintiff's theory, plaintiff would have standing under MCL 445.1576(3) to challenge the proposed Dodge vehicle line. In particular, plaintiff argued that the LOI did not constitute the operative "dealer agreement" to establish the Dodge line. Instead, plaintiff argued that the LOI was simply a prelude to the ultimate "dealer agreement" that Chrysler intended to enter with IHS. Plaintiff stated that the LOI did not actually award the Dodge vehicle line to IHS; rather, it included a number of contingencies that had to be completed by IHS before the ultimate dealer agreement would be executed. Because defendants' dealer agreement would be entered sometime after the 2010 statu-

tory amendment, plaintiff argued, the nine-mile relevant market area applied. Under plaintiff's theory, because plaintiff was located within the nine-mile relevant market area, it had standing to challenge defendants' actions pursuant to MCL 445.1576(3).

Chrysler responded, arguing that the LOI was a binding contract that fixed Chrysler's and IHS's rights as of the date of the agreement. Chrysler stated that the purpose of the LOI was to bind the parties to enter into a Dodge SSA upon IHS's performance of the LOI. Chrysler argued that the mere fact that the LOI did not contain the terms of the Dodge SSA was immaterial given that (1) the LOI referred to the Dodge SSA, (2) both parties were aware of the terms of the standard Dodge SSA, and (3) both parties acknowledged that they understood and agreed to those terms.

Following oral argument, the trial court entered an order granting defendants' motions for summary disposition pursuant to MCR 2.116(C)(10). The trial court concluded that the LOI fell within the statutory definition of "dealer agreement" under MCL 445.1562(3). The court reasoned that the LOI represented the "entire agreement" between defendants that " 'purports to establish the legal rights and obligations of the parties to the agreement or contract', and, as such, will necessarily be 'incorporated by reference' into any 'form' dealer agreement signed by [d]efendants." Given that the LOI constituted the operative dealer agreement, and given that the LOI was executed before the 2010 statutory amendment, under the trial court's reasoning, the preamendment six-mile relevant market area governed for purposes of standing. Accordingly, because plaintiff fell outside the six-mile relevant market area, plaintiff lacked standing to challenge the new vehicle line under MCL 445.1576(3), and the trial court granted

defendants' motions and dismissed plaintiff's complaint. This appeal ensued.

## II. STANDARD OF REVIEW

Plaintiff contends that the trial court erred when it granted summary disposition and erred when it concluded that the LOI constituted the operative dealer agreement between Chrysler and IHS to establish the Dodge vehicle line, thus making the preamendment six-mile relevant market area applicable in this case.

We review de novo a trial court's decision to grant summary disposition. *Coblentz v Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). The trial court granted defendants' motions for summary disposition pursuant to MCR 2.116(C)(10). Summary disposition of all or part of a claim is proper under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When deciding a motion under MCR 2.116(C)(10), the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). To the extent we must interpret and apply the relevant provisions of the MVDA, issues of statutory construction involve questions of law that we review de novo. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

## III. ANALYSIS

The MVDA generally governs the relationship between motor vehicle manufacturers, distributors, wholesalers, and dealers. Relevant to this appeal is MCL 445.1576(2) and (3), which provide in pertinent part as follows:

(2) Before a manufacturer or distributor enters into a *dealer agreement* establishing or relocating a new motor vehicle dealer *within a relevant market area* where the same line make is represented, the manufacturer or distributor shall give written notice to each new motor vehicle dealer of the same line make in the relevant market area of its intention to establish an additional dealer or to relocate an existing dealer within that relevant market area.

(3) Within 30 days after receiving the notice provided for in subsection (2), or within 30 days after the end of any appeal procedure provided by the manufacturer or distributor, a new motor vehicle dealer may bring a declaratory judgment action in the circuit court for the county in which the new motor vehicle dealer is located to determine whether good cause exists for the establishing or relocating of a proposed new motor vehicle dealer. [Emphasis added.]

In this case, on February 10, 2010, Chrysler sent IHS an LOI. The LOI stated that IHS has "requested that Chrysler . . . enter into a Dodge Sales and Service Agreement . . . with [IHS] . . . . " The LOI further stated that Chrysler "will accept Your offer to enter into an Agreement in its then-customary form, with You if You provide a new facility . . . for the exclusive display, sales and service of Dodge, Chrysler and Jeep vehicle lines that complies with the provisions of this . . . [LOI], and if You have completed all of the requirements of this LOI within the time periods set forth in this LOI."

At the time Chrysler sent IHS the LOI, the MVDA defined "relevant market area" as "the area within a radius of 6 miles of the intended site of the proposed or relocated dealer." MCL 445.1566(a), as amended by 1983 PA 188. However, effective August 4, 2010, the definition of "relevant market area" for counties with a population of more than 150,000 was amended by 2010 PA 139, which expanded the "relevant market area" to "the area within a radius of 9 miles . . . ." MCL 445.1566(1)(a). IHS is located more than six miles, but

within nine miles, of plaintiff. Because plaintiff does not argue that 2010 PA 139 applies retroactively, the central issue in this case is whether the LOI is a "dealer agreement" under the MVDA. If the LOI is a binding dealer agreement, then the six-mile radius applies and plaintiff lacks standing under MCL 445.1576(3) because the LOI was signed before the effective date of 2010 PA 139. However, if the LOI is not a dealer agreement, then the nine-mile radius applies and plaintiff has standing under MCL 445.1576(3) because any dealer agreement between Chrysler and IHS will necessarily be executed after the effective date of the amendment. Therefore, we proceed by examining the definition of "dealer agreement" set forth in the MVDA.

When IHS and Chrysler executed the LOI, the MVDA defined "dealer agreement" in pertinent part as follows:

> "Dealer agreement" means the agreement or contract in writing between . . . . a manufacturer and a . . . new motor vehicle dealer . . . which purports to establish the legal rights and obligations of the parties to the agreement or contract with regard to the purchase and sale or resale of new motor vehicles and accessories for motor vehicles. [MCL 445.1562(2), as amended by 1998 PA 456.]

Effective August 4, 2010, the definition of "dealer agreement" was amended by 2010 PA 140 and currently provides in pertinent part:

> "Dealer agreement" means an agreement or contract in writing . . . between a manufacturer and . . . a new motor vehicle dealer . . . that purports to establish the legal rights and obligations of the parties to the agreement or contract and under which the dealer purchases and resells new motor vehicles and conducts service operations. The term includes the sales and service agreement, regardless of the terminology used to describe that agreement, and any addenda to the dealer agreement, including all schedules,

attachments, exhibits, and agreements incorporated by reference into the dealer agreement. [MCL 445.1562(3).]

In this case, the trial court applied the amended definition of "dealer agreement"; however, given that the LOI was signed before the effective date of the amendment, the preamendment definition of "dealer agreement" is controlling. Under the preamendment definition, " '[d]ealer agreement' means the agreement or contract . . . which purports to establish the legal rights and obligations of the parties to the agreement or contract *with regard to the purchase and sale . . . of new . . . motor vehicles and accessories for motor vehicles.*" MCL 445.1562(2), as amended by 1998 PA 456 (emphasis added). In this case, the LOI does not purport to establish the legal rights and obligations regarding the sale of new motor vehicles and accessories. Rather, the LOI concerns the construction of a "new facility . . . for the exclusive display, sales and service of Dodge, Chrysler and Jeep vehicle lines . . . ." Indeed, paragraph 13 of the LOI states that "[t]his LOI constitutes [IHS] and [Chrysler's] entire agreement *concerning the establishment of the Facility*" (emphasis added). Thus, by its plain language, the subject matter of the LOI was the establishment of a new facility. Nothing within the LOI gave IHS the legal right to purchase and sell the Dodge vehicle line. Instead, the LOI was a prelude to the ultimate dealer agreement that IHS and Chrysler anticipated entering into at some point in the future. IHS was required to timely complete a new facility that complied with the requirements of the LOI, at which time Chrysler would accept IHS's offer to enter into a Dodge SSA. Therefore, under the preamendment definition, the LOI was not a "dealer agreement."[1] Accord-

---

[1] Even assuming the amended definition of "dealer agreement" governed in this case, our analysis would result in the same outcome. Under

ingly, any future dealer agreement between Chrysler and IHS will necessarily be executed after 2010 PA 139 took effect; thus, plaintiff is located within the "relevant market area" and plaintiff can maintain an action under MCL 445.1576(3) to determine whether good cause exists to establish the proposed Dodge vehicle line at IHS.

The trial court erred when it concluded that "the LOI comports with the 'ascribed meaning' of 'dealer agreement' set forth in the statute, which is, 'an agreement or contract in writing . . . that purports to establish the legal rights and obligations of the parties to the agreement or contract . . . .' " This conclusion is erroneous because the court failed to consider the underlying subject matter of the LOI. An agreement is not a dealer agreement simply because it "purports to establish the legal rights and obligations of the parties to the agreement or contract." Instead, the agreement must purport to establish the legal rights of the parties regarding the "purchase and sale or resale of new and unaltered motor vehicles and accessories for motor vehicles." As noted, the LOI at issue concerned prerequisites (i.e., construction of a facility) that IHS must fulfill before Chrysler would honor its request to enter into a Dodge SSA. The LOI did not govern the legal rights and obligations regarding IHS's sale of Dodge vehicles. Therefore, the trial court erred when it concluded

---

the amended definition, " '[d]ealer agreement' means an agreement or contract . . . that purports to establish the legal rights and obligations of the parties to the agreement or contract and *under which the dealer purchases and resells new motor vehicles and conducts service operations*." MCL 445.1562(3) (emphasis added). The LOI was not an agreement under which IHS would purchase and resell Dodge vehicles and conduct service operations. Rather, as discussed, it was a prelude to an agreement under which IHS would purchase and resell Dodge vehicles from Chrysler. Thus, even under the amended definition, the LOI was not a "dealer agreement."

otherwise and erred by granting defendants' motions for summary disposition. Accordingly, reversal and remand for further proceedings is appropriate.[2]

Plaintiff also contends that the trial court erred when, in denying plaintiff's motion for reconsideration, it ruled that plaintiff's claim was not ripe for adjudication. We review de novo questions concerning justiciability, including the doctrine of ripeness, on appeal. *Huntington Woods v Detroit*, 279 Mich App 603, 614; 761 NW2d 127 (2008).

The doctrine of ripeness focuses on the timing of an action and is "designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 615-616 (citation and quotation marks omitted). When considering whether courts may properly exercise judicial power to decide an issue, "the most critical element" is the "requirement of a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute." *Id.* at 615 (quotation marks and citations omitted).

In this case, in its motion for reconsideration, plaintiff argued that discovery into defendants' Dodge SSA was necessary to evaluate the LOI in light of the SSA. In denying plaintiff's motion, the trial court concluded that if the unsigned Dodge SSA was the operative "dealer agreement" under the MVDA, then plaintiff's complaint was not ripe because it was contingent on

---

[2] Plaintiff also contends that the trial court erred when it ruled that there were no genuine issues of material fact; however, given our conclusion that the trial court erred by granting summary disposition, we need not address this aspect of plaintiff's appeal.

"future events that may not occur as anticipated or may not occur at all." This conclusion was legally erroneous.

The genuine case or controversy here is whether good cause exists for establishing the Dodge vehicle line at IHS. As discussed earlier, plaintiff's cause of action is specifically provided for under MCL 445.1576(2) and (3). Contrary to the trial court's conclusion, the fact that no dealer agreement had been executed between Chrysler and IHS is irrelevant to the issue of ripeness. Specifically, MCL 445.1576(2) requires a manufacturer to provide notice to a like-line dealer of its intent to establish a new vehicle line "[*b*]*efore* a manufacturer or distributor enters into a dealer agreement . . . ." (Emphasis added.) Once the like-line dealer has notice, that dealer can commence a declaratory judgment action to determine whether good cause exists for establishing the proposed vehicle line. MCL 445.1576(3). Thus, under the plain language of the statute, it is not necessary that a dealer agreement actually be in place before an existing like-line dealer can file a declaratory action. All that is required is a notice of intent to "establish an additional dealer . . . within that relevant market area" where the same vehicle line make is represented. MCL 445.1576(2).

As discussed, plaintiff, a Dodge dealer, is located within the nine-mile relevant market area where Chrysler intends to establish the Dodge vehicle line at IHS. Plaintiff received notice that Chrysler intended to award the Dodge line to IHS. Therefore, under MCL 445.1576(3), plaintiff had standing to file a declaratory action to determine whether "good cause exists for the establishing . . . of a proposed new motor vehicle dealer." MCL 445.1576(3). Whether good cause exists for the establishment of the Dodge vehicle line at IHS is not contingent on future events that may not occur.

Thus, the case is ripe for adjudication, and the trial court erred by concluding otherwise.

For these reasons, the trial court's order is reversed and the case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, having prevailed, may tax costs pursuant to MCR 7.219.

BORRELLO, P.J., and FITZGERALD and OWENS, JJ., concurred.