# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH SANDERS and LANCE SANDERS,

Plaintiff-Appellants,

v

ALLSTATE INSURANCE COMPANY,

Defendant,

and

FCH ENTERPRISES, INC., and ROBERT
COLLIN ENGLISH,

Defendant-Appellees.

.

UNPUBLISHED
July 20, 2017

No. 331946
Oakland Circuit Court
LC No. 2015-145036-NI

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

This case is a third-party tort action arising from a motor vehicle accident occurring on February 13, 2013. Plaintiff Sarah Sanders and her husband plaintiff Lance Sanders (loss of consortium), sued the driver of the alleged at-fault vehicle, defendant Collin Robert English, and the vehicle's owner, defendant FCH Enterprises, Inc. The trial court granted defendants' motion for summary disposition, ruling that plaintiffs had not produced sufficient evidence to raise a genuine question of fact that Sarah suffered a threshold impairment under the no-fault act, MCL 500.3101 *et seq*. The parties then stipulated to entry of an order dismissing plaintiffs' first-party no-fault claims against defendant Allstate Insurance Company, closing the case at the trial court level. Plaintiffs now appeal by right. We affirm.

Plaintiffs' theory of the case was that although Sarah had a well-documented prior lumbar spine injury (herniated disc at L5-S1) for which she had already been scheduled for surgery when the auto accident occurred, she developed new symptoms of pain in her neck and arms, as well as cognitive and memory impairment with depression from a closed-head injury, after the accident at issue. Defendants argued that the evidence plaintiffs produced did not reveal an

-1-

objectively manifested impairment resulting from an injury received in the February 13, 2013 accident that supported plaintiffs' claims of neck and arm pain, or brain impairment.[1]

The trial court heard the parties' arguments on defendants' motion for summary disposition on December 23, 2015. It ruled that while a factual dispute existed concerning the nature and extent of Sarah's injuries, the dispute was not material to the determination of whether Sarah has suffered a serious impairment of body function. Thus, the court determined it could determine whether Sarah suffered a serious impairment of body function as a question of law under MCL 500.3135(2)(a)(*ii*). The court ruled that that plaintiffs had failed to establish that Sarah sustained a serious impairment of body function as defined in MCL 500.3135(5), i.e., "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." Plaintiffs now appeal by right, contending the trial court erred by granting defendants English and FCH Enterprises, Inc., motion for summary disposition on December 23, 2015.

## I. STANDARD OF REVIEW

This Court reviews de novo the trial court's grant or denial of a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party moving for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim, must specifically identify the undisputed factual issues, MCR 2.116(G)(4), and support its position with affidavits, depositions, admissions, or documentary evidence, MCR 2.116(G)(3)(b). See *Maiden*, 461 Mich at 120. If the moving party carries its initial burden, the party opposing the motion must then demonstrate a disputed material fact question exists by submitting evidence, "the content or substance of which would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6); See *Maiden*, 461 Mich at 120-121. When considering a motion under MCR 2.116(C)(10), a court must view the proffered evidence in the light most favorable to the party opposing the motion. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A trial court properly grants the motion when the proffered evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

## II. ANALYSIS

We conclude that the trial court properly granted defendants summary disposition. Although Sarah's complaints of neck and arm pain were newly reported after the accident, plaintiffs failed to present objective evidence of an accident-caused injury as their source. In addition, a physical examination of Sarah provided no objective evidence of neck and upper extremity impairment, and Sarah conceded in her deposition that it was intolerable pain

---

[1] While plaintiffs' brief alludes to aggravation of her pre-existing lower back injuries, it was clairifed at oral argument that this is not part of her claim.

stemming from her lower back injury—which predated the accident—that was causing her impairments. Plaintiffs also failed to present sufficient evidence of a closed head, "serious neurological injury," MCL 500.3135(2)(a)(ii), to survive summary disposition. See *Churchman v Rickerson*, 240 Mich App 223, 230-231; 611 NW2d 333 (2000). So Sarah's new complaints of pain in her neck and upper extremities, without medical testimony of an underlying accident-caused injury as its source, were insufficient to create a question of fact that the accident caused a third-party tort threshold impairment. MCL 500.3135(1), (5); *McCormick v Carrier*, 487 Mich 180, 195-198, 202; 795 NW2d 517 (2010); *Wiedyk v Poisson*, 497 Mich 880, 881; 854 NW2d 715 (2014).

Under the no-fault act, tort liability for noneconomic loss arising out of the ownership, maintenance, or use of a motor vehicle is limited to circumstances, as pertinent to this case, when a person has sustained a "serious impairment of [an important] body function." MCL 500.3135(1), (3)(b), (5); *McCormick*, 487 Mich at 189-190. "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). To meet this tort "threshold," an injured party must satisfy the no-fault act's definition of "serious impairment of body function," which means "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

A trial court may determine as a question of law whether a plaintiff has suffered a threshold impairment in only two situations. See *McCormick*, 487 Mich at 192-194. Specifically, a trial court may determine as a matter of law whether a "person has suffered serious impairment of body function" when the court first finds either "(*i*) [t]here is no factual dispute concerning the nature and extent of the person's injuries[,]" or "(*ii*) [t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function . . . ." MCL 500.3135(2)(a). Thus, on a motion for summary disposition concerning whether a plaintiff has presented sufficient evidence of a threshold impairment, a trial court must first "determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." *McCormick*, 487 Mich at 215.

In this case, the parties clearly disputed the nature and extent of any impairment from injuries Sarah received in the automobile accident at issue. Defendants contend Sarah suffered no new impairment and failed to present objective evidence of an accident-caused injury as the source of Sarah's post-accident neck and arm pain. Plaintiffs assert that Sarah sustained new neck and arm impairments in the accident. However, the trial court explicitly determined that the factual dispute was not "material to the determination whether the person has suffered a serious impairment of body function . . . ." MCL 500.3135(2)(a)(ii). Thus, the trial court properly determined as matter of law if plaintiff had produced sufficient evidence to create a question of fact as to whether the accident caused threshold impairment, i.e., "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5); *McCormick*, 487 Mich at 215.

To meet the threshold of a "serious impairment of body function," plaintiffs must present evidence of "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Our Supreme Court summarized the three statutory elements of a "serious impairment of body function" as follows:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*McCormick*, 487 Mich at 215.]

The third element, "affects the person's ability to lead his or her normal life," means "to have an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. This is a subjective, fact-specific inquiry determined on a case-by-case basis. *Id*. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the accident." *Id*.

In light of plaintiff's own testimony and the medical records, the trial court correctly ruled that plaintiffs failed to establish a question of fact whether Sarah sustained "an objectively manifested impairment (observable or perceivable from actual symptoms or conditions)," *McCormick*, 487 Mich at 215, that was caused by the February 13, 2013 automobile accident. The requirement that an impairment be "objectively manifested" means that the impairment must be "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. "In other words, an 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *Id*. The *McCormick* Court also noted that prior case law[2] regarding the meaning of "objectively manifested" was consistent with the plain language of MCL 500.3135(5).[3] *McCormick*, 487 Mich at 196-197. The Court "explained that the 'objectively manifested' requirement signifies that plaintiffs must 'introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering' and that showing an impairment generally requires medical testimony." *McCormick*, 487 Mich at 198, quoting *DiFranco v Pickard*, 427 Mich 32, 74; 398 NW2d 896 (1986). So, pertinent to this case, the serious impairment threshold is not satisfied by pain and suffering alone; it also requires plaintiffs to prove an objectively manifested injury that affects the functioning of the body. *McCormick*, 487 Mich at 197, citing *Cassidy v McGovern*, 415 Mich 483; 330 NW2d 22 (1982). In sum, a plaintiff must introduce evidence demonstrating a physical basis for the

---

[2] Specifically, the *McCormick* Court was referring to *Cassidy v McGovern*, 415 Mich 483; 330 NW2d 22 (1982), and *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986).

[3] Subsequent to the release of the *McCormick* decision in 2010, the Legislature re-designated MCL 500.3135(7) as MCL 500.3135(5). See 2012 PA 158, effective October 1, 2012.

plaintiff's subjective complaints of pain and suffering, which generally will require medical testimony. *McCormick*, 487 Mich at 198.

No objective evidence of an impairment related to the accident was presented. Notably, plaintiff's medical records contain no diagnosis for plaintiff's neck complaints nor was there any testing that ever even suggested a diagnosis.[4] A cervical spine CT and two cervical spine MRI's were normal, and an EMG indicated no cervical nerve root pathology.

While it is the impairment and not the injury that must be objectively demonstrated, plaintiffs proofs fail there as well. On examination after examination by multiple doctors plaintiff's cervical range of motion was consistently normal or near normal and no objective losses consistent with a cervical spine injury were ever documented. Moreover, plaintiff's own deposition establishes that there was very little, if any, difference in her ability to lead her normal life before and after the second accident. She testified that while the neck pain she began experiencing after the accident was exasperating, i.e., annoying or irritating, it was her chronic, debilitating low back pain from her preexisting injured disc at L5-S1 that caused her impairments. This is consistent with the fact that plaintiff's medical records reflect long-standing severe lowback pain due to a herniated disc at L5-S1 for which she had surgery before the accident. Her second lumbar surgery at the same level took place a week following the accident, but had been scheduled well before the accident occurred. Plaintiff unequivocally states in her deposition that despite the surgical interventions and other therapeutic efforts, her low back and lower extremity pain persisted. According to her testimony, it was her low-back pain from her preexisting condition and the failed surgeries that disabled her and was the reason for both her doctor imposed restrictions and the impairments she experienced. Finally, she does not identify any activities that are significantly affected by the claimed neck injury as opposed to her low back injury. The same is true as to the affidavits signed by her family members. In sum, plaintiffs failed to present evidence that the automobile accident caused an objectively manifested injury that affects the functioning of an important body part. MCL 500.3135(5); *McCormick*, 487 Mich at 196-198.

Last, plaintiffs argue they presented evidence to create a question of fact that Sarah suffered a closed head injury in the automobile accident. Citing *Churchman v Rickerson*, 240 Mich App 223, 232; 611 NW2d 333 (2000), plaintiffs argue that the trial court erred by rejecting this claim on the basis that plaintiffs did not satisfy the language of MCL 500.3135(2)(a)(*ii*), which provides that "a question of fact for the jury is created if a licensed allopathic [MD] or osteopathic physician [DO] who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." Based on a review of the evidence plaintiffs rely on, the statute, and relevant case law, we must agree with the trial court's finding that plaintiffs' claim of serious impairment of a body function on the basis of a closed head injury also fails.

First, plaintiffs presented absolutely no testimony under oath from an MD or DO "who regularly diagnoses or treats closed-head injuries" that Sarah suffered from "a serious

---

[4] One physician examiner suggested that some of her pain might have been due to a short-term neck strain or sprain, but did not elaborate.

neurological injury" as a result of the automobile accident. Instead, plaintiffs rely primarily on a November 25, 2015 report of Bradley G. Sewick, Ph.D., board certified neuropsychologist. Dr. Sewick wrote that "I do think that [Sarah] presents with what appears to be a probably resolving Post-concussion Syndrome secondary to the 2/13/13 head trauma."

Even assuming *Churchman* would permit consideration of Dr. Sewick's report—he is neither an MD nor a DO and did not testify under oath—we note that his report still does not satisfy the plain language of MCL 500.3135(2)(a)(*ii*) as interpreted by *Churchman*. In that case, the Court considered an affidavit of a DO who stated that the plaintiff " 'had sustained a post[-]traumatic stress disorder with closed-head injury and traumatic brain injury,' but did not state that [the plaintiff] had sustained a serious neurological injury as required by § 3135." *Churchman*, 240 Mich App at 227. The Court found that the affidavit was insufficient to satisfy the threshold requirement of MCL 500.3135. The Court explained that "the plain language of the statute requires some indication by the doctor providing testimony that the injury sustained by the plaintiff was severe. Here, neither the diagnosis of 'traumatic brain injury' nor a literal interpretation of those words necessarily indicates that the neurological injury suffered by [the plaintiff] may be 'serious.' " *Churchman*, 240 Mich App at 230. The Court held the statute "requires that the affidavit must contain testimony that a plaintiff may have sustained a *serious* neurological injury." *Id*. at 231. Consequently, the Court held that because the DO's affidavit did not "indicate the *degree* of injury, we find that it was not sufficient to satisfy the threshold requirement of § 3135." Dr. Sewick's report has the same infirmity: it does not satisfy the requirements of MCL 500.3135(2)(a)(*ii*) to create a question of fact that Sarah suffered a "serious neurological injury" from a closed head injury as a result of the automobile accident that is a serious impairment of a body function. *Churchman*, 240 Mich App at 230-231.

Other medical records suggesting the possibility of a closed head injury also fail to raise a question of fact as to whether, as a result, Sarah suffered a "serious neurological injury." MCL 500.3135(2)(a)(*ii*); *Churchman*, 240 Mich App at 230-231. The records of Beaumont Hospital, where Sarah was treated after the accident, indicate that she received a "[s]mall subcutaneous hematoma involving the left scalp without evidence of underlying fracture or intracranial hemorrhage." In other words, while Sarah had a bruise on her head, there was no evidence of an underlying injury to her skull or brain. Dr. Amy Pappas, DO, examined Sarah for "postconcussive syndrome" and issued a report on July 29, 2014. Dr. Pappas states that Sarah "presents with a constellation of symptoms that are indicative of posttraumatic stress disorder. Due to questionable head injury and resulting symptoms, TBI is still a concern." This report is only slightly more than speculation that Sarah's symptoms might indicate "posttraumatic stress disorder" or that she has a "questionable head injury," and there is a "concern" of "TBI," presumably meaning traumatic brain injury. Although Dr. Pappas is a DO, she did not testify under oath, and her report does not come close to establishing that Sarah suffered a "serious neurological injury," MCL 500.3135(2)(a)(*ii*), in the automobile accident. This evidence is insufficient to meet the no-fault threshold of a serious impairment of an important body function. MCL 500.3135(1), (2)(a)(*ii*), (5); *Churchman*, 240 Mich App at 230-231.

Plaintiffs did not establish a question of fact regarding the no-fault threshold of a serious impairment of an important body function. MCL 500.3135(1), (2)(a)(*ii*), (5). Therefore, the trial court properly granted defendants summary disposition.

We affirm.  As the prevailing parties, defendants may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro