*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF OSCAR OUSLEY, by
RICKIE D. OUSLEY, Personal Representative,

        Plaintiff-Appellant,

v

PHELPS TOWING, INC.,

        Defendant-Appellee.

UNPUBLISHED
August 26, 2021

No. 351378
Jackson Circuit Court
LC No. 18-001246-NI

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant summary disposition in this personal injury case arising from plaintiff's claim for damages allegedly sustained when plaintiff's decedent, Oscar Ousley, was struck by a tow truck owned by defendant and operated by one of defendant's employees. For the reasons set forth below, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

The material facts produced during discovery established the following events. Ousley arranged with defendant to tow a car from defendant's storage lot to Ousley's property. Defendant's employee, Joseph Mitchell, drove one of defendant's tow trucks with the car to Ousley's farm. Upon arriving at Ousley's home, Mitchell parked the tow truck in the circular driveway adjacent to Ousley's house.

Mitchell testified that Ousley and his son told him that they wanted Mitchell to unload the car at a spot between two outbuildings on the property. Mitchell decided to "check the ground out" to ensure the tow truck would not get stuck and then returned to the truck and began driving it in reverse toward the location where he was asked to "drop" the car. As Mitchell walked back to his truck, Ousley and his son walked away toward their barn and went to the "other side" of the barn out of Mitchell's view.

Mitchell began backing the tow truck toward the specified location, driving slowly at "not even three miles per hour." Mitchell was "constantly watching" his side mirrors while backing

the tow truck to ensure that he would not hit anything. As he neared the drop point, Mitchell realized he could not turn his truck to get there without damaging it, so he decided to do some back-and-forth maneuvering to better approach the drop location. After driving forward, he stopped, looked back, and saw Ousley lying on the ground. Mitchell had no idea where Ousley had come from, and that, if Ousley had approached directly behind the tow truck, there was no way Mitchell would have seen him because Ousley would have been in his blind spot. The tow truck Mitchell was driving was equipped with a "back-up beeper" that sounded when the truck was being driven in reverse.

Ousley suffered several injuries and was transported to the hospital. Ousley remembered being near the tow truck, and that he "somehow got caught underneath," but was otherwise unable to remember anything about the accident. It is undisputed that the only eyewitness to this incident is Mitchell—Ousley did not recall what happened.

Plaintiff retained Rodney Sadler, an expert in accident reconstruction. Sadler offered several opinions on things Mitchell might have done to prevent the accident, including asking Ousley to stand where Mitchell could see him before backing the tow truck, driving forward toward the drop point instead of reverse for most of the length of the trip, or having a rearview camera installed on the tow truck. Sadler admitted, however, that there was no legal requirement for the tow truck to have a rearview camera and that the truck was not otherwise in violation of any statute or regulation. Sadler also admitted that his opinions were based entirely on assumptions and that he did not have any knowledge of such things as from where the truck started moving, how fast it was going, or what path it took. Indeed, Sadler opined that Mitchell "did nothing wrong, per se," but merely might have "done something differently." Sadler did not, however, testify that any regulation, rule, or applicable standard of care *required* Mitchell to do anything differently.

Defendant moved for summary disposition of plaintiff's claim on the ground that plaintiff failed to present any admissible evidence to raise a genuine issue of fact about whether defendant or its employee, Mitchell, had acted negligently. Plaintiff argued in response that because, in Sadler's opinion, Mitchell could have done some things differently that might have prevented the accident, there was a question of fact on the issue of defendant's negligence.

After hearing arguments from both parties, the trial court ruled that plaintiff had failed to raise a genuine issue of material fact:

So, clearly we have a plaintiff who was severely injured and injured at the hands of . . . defendant's driver, that we know. We don't have strict liability in Michigan for operating a towing vehicle. What we have instead is the duty to use ordinary care and we don't have any evidence that the driver failed to use ordinary care. We have evidence of an accident, we have evidence of an injury, but we don't have any evidence that he failed to use reasonable care. We have conjecture, but conjecture is not enough to get a case to the jury.

There has to be a genuine issue of material fact as to whether or not the defendant driver failed to use ordinary care. And we just simply do not have that in this case. We've got an expert who himself says that the driver didn't do any-thing wrong. He has assumptions and speculations that the driver could have used

a different approach, but that's not the standard. The question is whether the approach he used was negligent and I just don't have in all of what's been submitted, any evidence that is sufficient to allow this case to go to a jury. So, I am granting the motion for summary disposition . . . .

A written order granting defendant's motion for summary disposition was entered, followed by this appeal.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). "A trial court properly grants the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 698; 880 NW2d 269 (2015). "When a motion under [MCR 2.116(C)(10)] is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." MCR 2.116(G)(4). See also *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

## III. ANALYSIS

A plaintiff seeking to prove negligence must show that a defendant had a duty to the plaintiff, breached that duty and that the breach proximately caused the plaintiff's damages. *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). "In a negligence case, the standard of conduct is reasonable or due care[,]" i.e., what a reasonable person would do under similar circumstances. *Moning v Alfono*, 400 Mich 425, 443; 254 NW2d 759 (1977). "It is not enough to create a genuine issue of material fact to provide conclusory statements that a duty was breached." *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 470; 646 NW2d 455 (2002). Likewise, it is insufficient to raise a question of fact regarding negligence by merely stating without evidence that the standard of care required certain action or that the defendant could have done more to prevent the alleged injury:

> Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (comparing the gross-negligence and negligence standards).]

Here, plaintiff has simply presented no evidence of negligence. Indeed, the only witness with any direct knowledge of the facts was Mitchell, who testified that he checked the area where he was driving and saw no one, and he continually checked his mirrors to make sure he did not hit anyone as he was backing up the tow truck. That Ousley was struck by the truck is not enough, in

and of itself, to refute Mitchell's testimony—indeed, it would be consistent with Mitchell's testimony that he did not know where Ousley came from and might have approached the tow truck in Mitchell's blind spot.

Plaintiff's expert, Sadler, did not provide sufficient evidence to raise a material question of fact about whether Mitchell breached the standard of care. Sadler testified only that there were certain things Mitchell might have done differently, which may have yielded a different result. He did not say that the standard of care, or any law or regulation, required Mitchell to take those steps. In fact, Sadler admitted that Mitchell had "done nothing wrong" but that there were extra precautions that *might* have prevented the accident if Mitchell had taken them. Such hindsight-driven opining is not sufficient to raise a genuine issue of material fact. We also note that Sadler was not offered as a standard-of-care expert for tow truck drivers or other commercial drivers, he did not purport to know or otherwise opine on the applicable standard of care, and he admitted that he had no personal knowledge of the key facts and that most of his opinions were based on his assumptions about what had occurred.

Defendant correctly asserts that the authority upon which plaintiff relies is distinguishable from the instant case. In *Jenkins v Bentley*, 277 Mich 81, 84; 268 NW 819 (1936), unlike here, the record was clear that the defendant truck driver simply did not check to see whether the plaintiff was behind his truck before he started backing it up, eventually hitting the plaintiff. Similarly, in *McCullough v Ward Trucking Co*, 368 Mich 108, 113; 117 NW2d 167 (1962), the record included evidence that the defendant driver failed to use his rearview mirrors before the accident at issue; here, the *only* evidence presented on that subject was that Mitchell did make continual use of his mirrors.

*Vanden Berg v Grand Rapids Gravel Co*, 42 Mich App 722, 726-727; 202 NW2d 694 (1972) is yet another case where, unlike here, a defendant truck driver injured a plaintiff after failing to take any steps to determine whether he had a clear path before he began driving. And *Hopkins v Lake*, 348 Mich 382, 395; 83 NW2d 262 (1957), held that the defendant had, and breached, a heightened duty to be cautious because of the presence of a young child, whom he struck with his truck. Neither Ousley nor his son was a child, and thus *Hopkins* simply has no application here.

Plaintiff argues that summary disposition was premature because the trial court granted it before the close of discovery. "As a general rule, a motion for summary disposition under MCR 2.116(C)(10) is premature if discovery has not been completed, unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position." *Kern v Kern-Koskela*, 320 Mich App 212, 227; 905 NW2d 453 (2017) (quotation marks and citation omitted). Under MCR 2.116()(1), however, a party asserting that the party's position cannot be presented because that party cannot obtain affidavits from witnesses supporting that position must present an affidavit identifying the witnesses, why their testimony cannot be obtained, and what the "probable testimony" of the witnesses would be. Plaintiff submitted no such affidavit here. The trial court did not prematurely grant summary disposition.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens