*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT L. HINDELANG and PAULA M.
HINDELANG,

        Plaintiffs-Appellants,

v

CITY OF GROSSE POINTE, CITY COUNCIL OF
GROSSE POINTE, CITY MANAGER OF GROSSE
POINTE, CITY CLERK OF GROSSE POINTE, and
MAYOR OF GROSSE POINTE,

        Defendants-Appellees.

UNPUBLISHED
May 18, 2023

No. 359156
Wayne Circuit Court
LC No. 20-007839-CZ

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

This case arises from the approval of a lot split of a residential lot in the city of Grosse Pointe (the city). On appeal, plaintiffs, who opposed the lot split and filed suit, challenge the trial court's orders granting summary disposition in favor of defendants, the city of Grosse Pointe, the city council, the city manager, the city clerk, and the mayor, and dismissing all of plaintiffs' claims. Although plaintiffs ultimately alleged 20 different state-law counts, they only challenge the dismissal of 13 of those counts on appeal. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Plaintiffs own a residential lot located at 235 Lincoln Road in Grosse Pointe, whose rear (western) property line abuts a lot located at 250 Washington Road. The Washington lot is zoned Estate Residential (E-R) and contains an approximate 9,000-square-foot home, which is in the northern portion of the lot. The eastern border of the Washington lot abuts the western border of plaintiffs' lot. However, because the Washington lot is approximately twice the size of plaintiffs' lot, only the southern portion of the Washington lot's eastern border abuts plaintiffs' lot. Simply put, plaintiffs' lot abuts the southern, vacant portion of the Washington lot.

One of the owners of the Washington lot filed an application with the city to split the lot into a northern portion and a southern portion. After some discussions with the owner, McKenna

-1-

& Associates (McKenna), who the city hired to conduct city planning services, recommended that the city council approve the lot split. The city council considered the proposed split of the Washington lot at a meeting on February 10, 2020. The city council had some concerns about the proposed split and tabled the issue for 60 days. At a meeting on April 20, 2020, the city council voted on whether to approve the lot split. Although a majority voted to approve the split, the 4-3 vote failed to meet the two-thirds majority requirement for this proposal, resulting in the proposal failing.

The city council met again on May 11, 2020, at a meeting labeled as a "Budget Hearing," in which the primary focus was the city's 2020-2021 budget.[1] At this meeting, the minutes for the prior April meeting were not considered for approval. Toward the end of the meeting, the city council went into a planned closed session to "[r]eview attorney memorandum subject to attorney client privilege."

At the next regular city council meeting on May 18, 2020, the city council voted to reconsider its April 20, 2020 denial of the lot split. The council then decided in a 6-0 vote to allow the split. Although this decision to open the issue for reconsideration and the decision to actually approve the lot split was noted in the minutes for the May 18 meeting, council also voted to reflect these decisions in the minutes for the April 20 meeting.

On June 22, 2020, plaintiffs filed their initial complaint alleging 14 counts. A week later, they filed their first amended complaint, realleging the original 14 counts and adding six more, for a total of 20 counts. The claims in plaintiffs' first amended complaint fall into the following categories: 11 counts alleged violations of the Open Meetings Act (OMA), MCL 15.261 *et seq.*; six counts alleged violations of the city's ordinances; one count set forth an appeal of the city's zoning decision; two counts implicated federal law by alleging a taking and a due-process violation; and one count alleged a violation of Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.*[2]

In April 2020, plaintiffs made a request to the city for the production of documents under Michigan's FOIA. On June 5, 2020, the city declined to produce certain documents because of attorney-client privilege. On June 15, 2020, plaintiffs made a supplemental request for the production of other documents that were referred to, but not supplied in, the initial production of documents. Defendants, however, later declined to produce them, citing the litigation exception under the FOIA now that an action was pending between the parties.

Defendants thereafter removed the case to federal court, but because the 18 state-law claims predominated over the entire complaint, the federal court declined to exercise supplemental

---

[1] Because of the COVID-19 pandemic, this meeting was conducted virtually by Zoom.

[2] The total number of "counts" exceeds 20 because Count IX alleged violations of both the OMA and the Grosse Pointe Ordinances.

jurisdiction over the state claims and remanded those 18 claims to the Wayne Circuit Court.[3]  The state-law counts alleged in plaintiffs' first amended complaint are summarized as follows:

<u>OMA Violations</u>

Count I:  Defendants violated the OMA by failing to timely post the proposed minutes for the May 11, 2020 meeting.

Count II:  Defendants violated the OMA by failing to timely post proposed minutes of the May 18, 2020 meeting.

Count III:  Defendants violated the OMA by failing to timely post approved minutes of the May 11, 2020 meeting.

Count IV:  Defendants violated the OMA by failing to timely post approved minutes of the May 18, 2020 meeting.

Count VI:  Defendants violated the OMA by failing to provide sufficient notice of the city council's 2020 meetings.

Count VII:  Defendants violated the OMA by failing to timely approve the minutes of the April 20 meeting.

Count VIII:  Defendants violated the OMA by deliberating and making decisions in a closed meeting.  Specifically, defendants' deliberation regarding reconsideration of its April 20 vote denying the lot split was not conducted in a public session.

Count IX:  Defendants violated the OMA (and ordinances) by failing to provide sufficient notice for the May 18 meeting.

Count XI:  Defendants violated the OMA in the procedure going into and returning from the closed session on May 11.

Count XIII:  Defendants violated the OMA by submitting false and misleading minutes for the May 11, 2020 meeting.

Count XIV:  Defendants violated the OMA by not submitting proposed minutes for the April 20 meeting and its revision.

<u>Grosse Pointe Ordinance Violations</u>

---

[3] The parties later stipulated to dismiss the two claims that remained in federal court, and those claims are not at issue on appeal.

Count V:      Defendants violated the Grosse Pointe Ordinances by not signing posted minutes.

Count IX:      Defendants violated the Grosse Pointe Ordinances (and OMA) by failing to provide sufficient notice for the May 18 meeting.

Count X:      Defendants violated the Grosse Pointe Ordinances by not complying with its notice requirements in relation to the May 18 meeting.

Count XII:      Defendants violated the Grosse Pointe Ordinances by going into a closed session on May 11.

Count XVI:      Defendants violated the Grosse Pointe Ordinances because the council's decision to approve the lot split produced a result that is contrary to the Master Plan and other ordinance provisions.

Count XVII:      Defendants violated the Grosse Pointe Ordinances by considering an application that was defective under the ordinances.

### Administrative Appeal of Decision

Count XV:      Plaintiffs challenge the May 18 decision to allow the lot split, arguing, among other things, that the decision was unreasonable, arbitrary, and capricious.

### FOIA Violation

Count XX:      Plaintiffs request an in camera review of materials that defendants have declined to disclose under the FOIA, claiming attorney-client privilege.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (8). The trial court granted defendants' motion respecting Counts V, VII, IX-XII, XIV, XVI, and XVII, and dismissed those counts with prejudice. For Count V, the court ruled that nothing in the ordinances or the OMA required any meeting minutes to be signed. For Count VII, the court ruled that any violation of untimely posting of approved minutes was *de minimis* and not intentional. For Count IX, the trial court ruled that there was no notice violation because plaintiffs had notice of the May 11 meeting and even participated in the May 18 meeting. For Counts X, XVI, and XVII, the trial court determined that they were not actionable because they did not pertain to the city council's decision-making process. Although the trial court in its written order dismissed Counts XI and XII, it gave contradictory rulings during the hearing, first seemingly denying defendants' motion on these counts and then later granting the motion and dismissing these counts. The trial court dismissed Count XIV because the April 20 minutes on their face showed no violation of the OMA. The trial court ruled that the remaining counts could survive defendants' motion, but some would need to be amended.

-4-

Consistent with the trial court's ruling, plaintiffs filed a second amended complaint that contained amended Counts I-IV and XX,[4] and contained two new counts, Counts XXI and XXII. Count XXI alleged a violation of 1963 Const, art 1, § 17 in conjunction with defendants treating plaintiffs unfairly. Count XXII alleged that defendants failed to treat the lot split as a variance subject to action by the zoning board of appeals. Defendants thereafter filed their second motion for summary disposition on Counts XXI and XXII under MCR 2.116(C)(7) and (8), and dismissal of Count XV under MCR 7.211. The trial court granted the motion. The court dismissed Count XV because plaintiffs failed to allege any special damages, a necessary requirement to have standing to appeal a zoning decision. The trial court granted defendants' motion for summary disposition on Count XXI because, in part, plaintiffs provided no legal theory to support their due-process claim. The court also granted defendants' summary disposition on Count XXII because the issue it raised—that the lot split should have been treated as a zoning variance—should have been addressed through an appeal of the city's decision, and not as an original cause of action.

Unrelated to the issues on appeal, defendants moved to quash a subpoena that plaintiffs issued to McKenna. At the hearing on that motion, however, some confusion arose about which of plaintiffs' claims were still pending, and the trial court urged the parties to file dispositive motions on the remaining claims. Consequently, defendants filed their third motion for summary disposition, this time under MCR 2.116(C)(7), (8), and (10), seeking the dismissal of all of plaintiffs' remaining claims, Counts I-IV, VI, VIII, XIII, and XX. Plaintiffs did not file a response and the trial court initially granted the motion on all counts, except the FOIA claim in Count XX. Regarding the counts related to the OMA (Counts I-IV, VI, VIII, and XIII), the court noted that plaintiffs did not provide any law in support of their claims and dismissed them. But the trial court denied defendants' motion respecting the FOIA claim in Count XX. Although defendants relied on MCL 15.243(1)(v)'s litigation exception, which exempts disclosure to parties that have pending civil action with the public body, the trial court held that under *Central Mich Univ Supervisory-Technical Ass'n v Central Mich Univ Bd of Trustees*, 223 Mich App 727; 567 NW2d 696 (1997) (*CMU*), the city could not refuse to disclose materials based on the parties being in litigation.

Defendants moved for reconsideration and argued that *CMU* did not control because that case interpreted a prior version of the FOIA, as the act existed in 1995. The Legislature added the exception at issue in this case, MCL 15.243(1)(v) in 1997. And because the requested records were related to the pending litigation between plaintiffs and defendants, the records were properly exempt from disclosure under MCL 15.243(1)(v). The trial court granted defendants' motion for reconsideration, acknowledged that *CMU* was superseded by the later FOIA amendment, and granted summary disposition in favor of defendants on the remaining Count XX. This appeal followed.

---

[4] The amended Count XX still alleged a FOIA violation, but it now primarily alleged that a violation occurred when defendants relied on FOIA's litigation exception when they refused to turn over documents.

-5-

## II. FOIA CLAIM (COUNT XX)

Plaintiffs first argue that the trial court erred by granting defendants' motion for reconsideration and granting summary disposition in favor of defendants on plaintiffs' FOIA claim. We disagree.

This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). To the extent that the trial court's decision involves a ruling on a motion for summary disposition, our review is de novo. *Id*. Statutory interpretation of the FOIA presents a question of law that we review de novo. *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 382; 872 NW2d 223 (2015).

"A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted. The motion should be granted if no factual development could possibly justify recovery." *Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001).

In *Arabo*, 310 Mich App at 380, this Court observed:

The [FOIA] declares that it is the public policy of this state to entitle all persons to complete information regarding governmental affairs so that they may participate fully in the democratic process. A public body must disclose all public records that are not specifically exempt under the act. [Quotation marks, alteration, and citations omitted.[5]]

MCL 15.243(1) provides a list of items that are exempt from disclosure as a public record and includes, in pertinent part:

(v) Records or information relating to a civil action in which the requesting party and the public body are parties.

Exemptions are to be narrowly construed, and the party seeking to invoke an exemption must prove that a particular exemption applies. *City of Warren v Detroit*, 261 Mich App 165, 169-170; 680 NW2d 57 (2004).

The trial court, while relying on *CMU,* initially denied defendants' motion for summary disposition respecting this count. In *CMU*, the plaintiff, one day after filing a civil suit against the defendant, attempted to obtain public documents by FOIA request. The defendant denied the request, averring that the plaintiff had to follow proper discovery rules to obtain it. *CMU*, 223 Mich App at 728. This Court framed the issue as "not whether [the] plaintiff had a substantive right to the information sought, but whether [the] plaintiff could seek the information through the

---

[5] See also *Amberg v City of Dearborn*, 497 Mich 28, 30; 859 NW2d 674 (2014).

FOIA in light of the fact that it had filed a suit." *Id*. at 729. This Court held that there is no conflict between the court rules and the FOIA, and that

> [t]he fact that discovery is available as a result of pending litigation between the parties does not exempt a public body from complying with the public records law. We refuse to read into the FOIA the restriction that, once litigation commences, a party forfeits the right available to all other members of the public and is confined to discovery available in accordance with court rule. [*Id*. at 730.]

The key part of this Court's holding in *CMU* is "[w]e refuse to read into the FOIA" a litigation restriction. The restriction at issue, MCL 15.243(1)(v), was not part of the FOIA when this Court decided the *CMU* case. The Legislature added the litigation exception by 1996 PA 553, effective March 31, 1997.[6] Although *CMU* was decided in May 1997, the issues before the Court involved the pre-amendment version of the statute. The trial court in this case, therefore, properly determined that *CMU* was not controlling.

In *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200; 725 NW2d 84 (2006), this Court interpreted the litigation exception of MCL 15.243(1)(v). In *Taylor*, the plaintiff's friend was involved in litigation with the defendant. *Id*. at 202. The plaintiff sought certain records that were pertinent to the friend's litigation. *Id*. The attorney representing both the plaintiff and the friend were the same person. *Id*. at 206. The defendant denied the request under MCL 15.243(1)(v), claiming that the plaintiff merely acted as the friend's agent. *Id*. at 202-203. This Court held that because MCL 15.243(1)(v) lacked ambiguity, judicial construction was not permitted and the statute's plain meaning must be given effect. *Id*. at 207. Consequently, because MCL 15.243(1)(v) only exempts the disclosure of documents when the "requesting party and the public body are parties" in a civil action, it did not matter if the requesting party was acting as a proxy for someone else. The pertinent inquiry simply is whether the public body "is a party to a civil action involving the requesting party."[7] *Id*. at 205. For the litigation exception to apply, however, in addition to the requirement that the requesting party and public body both be parties to a civil action, MCL 15.243(1)(v) also contains the requirement that the requested documents are "[r]ecords or information relating" to the civil action, which was not the focus of the parties' appeals in *Taylor*.

In this case, there is no dispute that at the time defendants denied plaintiffs' supplemental request, plaintiffs and defendants were parties to the instant civil action. The civil action

---

[6] The litigation exception, as added by 1996 PA 553, was originally codified as MCL 15.243(1)(w). That provision was later moved to MCL 15.243(1)(v) when the FOIA was amended by 2000 PA 88, effective May 1, 2000.

[7] The Court in *Taylor* expressed its displeasure with this outcome because it was a trivial matter for a litigant to skirt around any prohibition, which ostensibly produced a "distasteful" and "absurd" result. *Taylor*, 272 Mich App at 206-207. Regardless, this Court declined to engage in judicial lawmaking by interpreting the statute in a manner to correct any perceived deficiencies, leaving it for the Legislature to address. *Id*. at 207.

challenged the city's decision to allow the lot split, and plaintiffs did not allege, nor do they suggest, that the requested documents did not pertain to events surrounding and leading up to that decision.[8] Even under a narrow interpretation of this exemption, therefore, the requested documents were "related" to the civil action. The trial court did not err by ruling that the requested documents were exempt from disclosure under MCL 15.243(1)(v).

Plaintiffs argue that because they made the FOIA request before filing their complaint, the exception should not apply. This argument is not supported by the language of the statute. As this Court noted in *Taylor*, the unambiguous civil-action exemption must be given its plain meaning. The exemption simply allows for a public body to exempt materials from disclosure if "[r]ecords or information relating to a civil action in which the requesting party and the public body *are* parties." MCL 15.243(1)(v) (emphasis added). As this Court determined in *Taylor*, "the public body asserting the exemption in MCL 15.243(1)(v) must prove that it is a party to a civil action involving the requesting party." *Taylor*, 272 Mich App at 205. When complaints were filed and when FOIA requests were made are not material. What is material is whether the requesting party and the public body, *at the time of the public body's decision*, are parties in a civil action. This is supported by the plain language of MCL 15.243(1), which states that "[*a*] *public body may exempt* from disclosure as a public record under this act any of the following[.]" (Emphasis added.) The language "[a] public body may exempt" shows that the pertinent time for determining whether an exemption applies is when the public body makes its decision.

Plaintiffs also argue that MCL 15.243(1)(v) should not apply because they were not seeking documents as an alternative to discovery. A requesting party's motive or use of the requested information, however, is not relevant. See *Taylor*, 272 Mich App at 205 ("Case law is clear that initial as well as future uses of information requested under FOIA are irrelevant in determining whether the information falls within exemption . . . ."). Accordingly, we affirm the trial court's dismissal of plaintiffs' FOIA claim in Count XX.

## III. COUNTS XVI, XVII, AND XXI

Plaintiffs next argue that the trial court erred by dismissing their Counts XVI, XVII, and XXI pursuant to MCR 2.116(C)(8). We disagree.

Counts XVI and XVII were alleged in plaintiffs' first amended complaint and were subjects of defendants' first motion for summary disposition. Plaintiffs alleged Count XXI in their second amended complaint and the trial court granted defendants' second motion for summary disposition and dismissed that count. Count XVI alleged a cause of action premised on the approval of the lot split being contrary to the city's master plan and certain ordinances. Plaintiffs alleged that the decision violated the city's master plan, which provides:

---

[8] Indeed, plaintiffs' supplemental request sought, among other things, "[a]ll documents relating to all applications for the lot split."

The intent of this [E-R] district is to encourage reinvestment in these beautiful homes rather than facilitate their demolition by allowing the lots to be divided. . . .

Many of the homes in this district are located on several platted lots. When under the same ownership these lots will be considered one single building lot.

Plaintiffs further alleged in this count that the decision to approve the lot split violated Grosse Pointe Ordinances, §§ 90-206 through 90-209. Although plaintiffs made this general allegation, they only quoted Grosse Pointe Ordinances, § 90-206, which provides:

The E-R estate residential district is established exclusively for single-family residential and municipal uses. This district is tailored to certain residential estate areas having characteristics of planned residential developments, larger lot sizes, and a relationship to the lake. The specific intent of this district is:

(1) To encourage the construction and continued use of the land for single-family dwellings.

(2) To encourage the continued use and improvement of significant accessory structures such as garages, coach houses, pool houses, etc. of the existing homes and accessory structures.

(3) To provide special zoning provisions that reflects the unique characteristics and architectural heritage of the existing homes of the city.

(4) To preserve the estates of Grosse Pointe by discouraging the subdivision of existing lots.

(5) To prohibit business, commercial, or industrial use of the land, and to prohibit any other use which would substantially interfere with the development and maintenance of single-family dwellings.

(6) To encourage the discontinuance of existing uses that would not be permitted as new uses under the provisions of this chapter.

(7) To discourage any land use which would generate traffic on minor or local streets, other than normal traffic to serve those residences.

(8) To discourage any use which because of its character or size would create requirements or costs for public services such as fire and police protection, water supply, and sewerage, substantially in excess of such requirements and costs if the district were developed solely for single-family dwellings.

Grosse Pointe Ordinances §§ 90-207, 90-208, and 90-209 specify various requirements. For instance, § 90-207 states the "permitted uses" for property within the E-R district, which includes "[s]ingle-family detached dwellings." Section 90-208 provides requirements for any accessory buildings or structures, such as detached garages and swimming pools. And § 90-209

incorporates § 90-351, which provides for other requirements, such as the maximum lot coverage (i.e., the maximum "footprint" size a building can have on the lot), the minimum size of a lot, the lot's minimum width, the maximum height of buildings on the lot, and the minimum distance any building must be located from the property lines (i.e., setbacks).

Plaintiffs alleged in Count XVII that, contrary to certain city ordinances, the application for the lot split contained many defects and should not have been considered by the city council. Defendants moved for summary disposition on Counts XVI and XVII on the ground that plaintiffs could not collaterally challenge the approval of the lot split in an original action and instead were required to file an appeal of that decision. Defendants also argued that plaintiffs lacked standing to bring an administrative appeal because they were not "aggrieved" parties. In response, plaintiffs did not address that their count stated an original cause of action instead of an administrative appeal. Plaintiffs asserted that they had "special damages" that made them aggrieved parties because they owned the only lot that abuts the newly created post-split lot.

The trial court granted defendants' motion for summary disposition, stating:

> [T]hese counts concern city ordinances or the city master plan. They don't really have anything to do with the city's decision making process. I don't see where there -- these counts are even actionable.
>
> *  *  *
>
> There is nothing in the city charter or city ordinances allowing a person to sue the city or council for purported violations. The Plaintiffs do not have standing to bring a lawsuit against the city for these claimed violations.[9]

The trial court did not err. As in the trial court, on appeal plaintiffs do not cite any authority that they possess a cause of action for the purported ordinance violations. Plaintiffs' reliance on *Sun Communities v Leroy Twp*, 241 Mich App 665; 617 NW2d 42 (2000), is misplaced. In *Sun Communities*, the plaintiff filed an application to have certain property rezoned. The defendant's zoning board denied the application. Almost three months later, the plaintiff filed a multicount complaint in circuit court alleging "numerous constitutional challenges" to the board's actions. *Id*. at 672. The circuit court concluded that it lacked subject-matter jurisdiction because the plaintiff failed to timely file an administrative appeal from the board's decision. *Id*. at 667-668. This Court first noted that zoning is a legislative function, as opposed to an administrative one. *Id*. at 669-670. This Court reversed the circuit court because the plaintiff was not merely appealing an administrative activity; instead, the plaintiff made "constitutional challenges to the legislative

---

[9] The trial court's ruling seems to conflate a failure to state a valid claim and a lack of standing to raise an otherwise valid claim. We read the trial court's reference to "standing" as not literally meaning that plaintiffs lacked standing to bring the claims they raised, but as an inartful way of reiterating that there is no cause of action for the claims that plaintiffs raised.

actions of the township board," *id*. at 672, and the 21-day time limit for filing administrative appeals to the circuit court did not apply.

*Sun Communities* is inapposite because Counts XVI do XVII do not raise constitutional challenges, and because the city council's decision to approve a lot split is not legislative. In *Sun Communities*, this Court recognized that the necessity of an administrative appeal depends on whether the underlying action was legislative or administrative, with only administrative actions requiring an appeal to the circuit court. *Id*. at 670. This Court recognized that actions such as site-plan review and the approval of special-use permit requests are administrative, while zoning and rezoning decisions are legislative. *Id*. at 669-670. This Court explained:

> "The adoption of a zoning ordinance is a legislative act. . . . Logic suggests that since the zoning map is almost inevitably a part of the zoning ordinance, the rezoning of a single parcel of land from one district to anther is an amendment of the zoning ordinance and is likewise a legislative act." [*Id*. at 669, quoting Crawford, Michigan Zoning and Planning (3d ed), § 1.11, p 53.]

In this case, the approval of a lot split does not involve the adoption of an ordinance or the revision of an ordinance, zoning or otherwise. It involves a review of site plans, which is akin to the administrative functions of approving variances or special-use permits. Consequently, lot splitting is an administrative function and not a legislative one, and plaintiffs' claim that the lot split was improperly decided on the basis of purported ordinance violations requires an appeal to the circuit court. Because Counts XVI and XVII alleged original causes of action, i.e., not appeals, the trial court properly dismissed them. Notably, in the same order dismissing these counts, the trial court allowed plaintiffs' appeal contained in Count XV to continue, pending the count's amendment.

The other count relevant to this issue is Count XXI which alleged a violation of Const 1963, art 1, § 17[10] because defendants treated plaintiffs unfairly and unjustly. Defendants moved for summary disposition of this count on the ground that Michigan law does not allow a cause of action for damages against a municipality or an individual government employee for a violation of the Michigan Constitution. While opposing defendants' motion, which sought summary disposition on three different counts, including Count XXI, plaintiffs offered nine different arguments, but they did not specify which arguments pertained to Count XXI. The only argument that appeared to address defendants' position is found in Argument #5:

---

[10] This constitutional provision states:

> No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed. [Const 1963, art 1, § 17.]

Defendants are not entitled to any claim of Governmental Immunity for violation of Procedural Due Process, and Plaintiffs are entitled to conduct the necessary discovery to determine whether Defendants have complied with the Procedural Due Process Requirements.

At the hearing, defendants again asserted their position that there is no private right of action for damages against a municipal entity or its employees. Plaintiffs provided a somewhat baffling response, citing Const 1963, art 6, § 28,[11] and claiming entitlement to an administrative hearing on the matter. The response seemed out of place because plaintiffs' Count XXI did not purport to raise an administrative appeal. Further, as previously discussed, constitutional challenges fall outside the purview of administrative appeals, so the right to an administrative appeal is not relevant to deciding whether plaintiffs possess an independent cause of action asserting a constitutional violation.

The trial court granted defendants' motion on this count, explaining:

[In defendants' motion for summary disposition, t]hey cite *Jones v Powell*, 462 Mich 329[; 612 NW2d 423 (2000),] and other cases. Plaintiff[s] simply assert in their response, which was filed late, that their procedural due process rights were violated and therefore the action taken in such violation is void.

They don't provide any legal theory. It is well established law that a party may not simply announce a position and leave it for the Court to search for authority to sustain or reject the position.

The Court is going to grant defendant's [sic] dispositive motion with regard to Count 21.

On appeal, plaintiffs do not address the basis for the trial court's dismissal of Count XXI, their failure to meaningfully address defendants' argument, and their failure to provide any authority for their position. When an appellant fails to dispute the basis of the trial court's ruling, this Court need not consider granting the appellant the relief sought. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Therefore, we deem plaintiffs' argument related to the dismissal of Count XXI as abandoned and decline to address it.

---

[11] This constitutional provision provides, in pertinent part:

All final decisions, findings, ruling and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28.]

IV.  OMA CLAIMS

Plaintiffs argue that the trial court erred by granting summary disposition in favor of defendants on certain OMA claims.  We disagree.

Plaintiffs specified that the particular claims at issue are Counts II, V, VII, VIII, X, XI, XII, XIII, and XIV.  Defendants moved for summary disposition of some of these claims on different grounds, which are subject to different standards.

A.  MCR 2.116(C)(8)—COUNTS V, VII, X, XI, XII, AND XIV

In their first motion, defendants moved for summary disposition under MCR 2.116(C)(8) on Counts V, VII, X, XI, XII, and XIV, among others, which the trial court granted.  Accordingly, these claims must be considered as they existed at the time the motion was granted, as they were pleaded in plaintiffs' first amended complaint.

Count V alleged that defendants violated the OMA and the local ordinance when they failed to post signed city council meeting minutes.  When defendants moved for summary disposition, they argued that this claim failed as a matter of law because the OMA does not require the minutes, signed or unsigned, to be posted anywhere.  In their written response, plaintiffs never directly addressed this count or any signing requirement.  At the motion hearing, the trial court viewed the count as only alleging a violation of the OMA.  Although plaintiffs argued that the failure to sign the minutes also violated the city code, plaintiffs never asserted that the court incorrectly viewed the claim as solely an OMA claim.  Despite plaintiffs' failure to object or to otherwise correct the trial court, we conclude that the trial court erred when it viewed Count V as only raising an OMA claim.  The allegations clearly cited "Section 27 of the Grosse Pointe Municipal Code," and the title of the count stated "Defendants Violated Grosse Pointe City Code By Not Signing Posted Minutes."  This error, however, does not require reversal.

On appeal, plaintiffs concede that the OMA does not require any meeting minutes to be signed.  They maintain that the Grosse Pointe Charter nonetheless requires that the minutes be signed.  Section 27 of the charter states, in pertinent part, that "[t]he council shall determine the rules of its proceedings and keep a journal thereof in the English language, which shall be signed by the city clerk, and shall be open to the public."  Grosse Pointe Charter, § 27.  Assuming without deciding that "journal" is synonymous with "meeting minutes," see MCL 117.3(m) (stating that city charters are to require cities to maintain a "journal of each session of the legislative body"), plaintiffs fail to appreciate that, while the official minutes are to be signed by the city clerk, there is no requirement that they also be posted anywhere.  Defendants' argument, although raised in the context of the OMA, applies equally to the charter.  Plaintiffs' claim has *two* components: the city failed (1) to post (2) signed minutes.  Because the city charter does not require any minutes to be *posted*, plaintiffs failed to state a valid claim, and summary disposition was warranted under MCR 2.116(C)(8).  A requirement to have the minutes "open to the public" is not the same as requiring them to be *posted*.  In other words, as defendants have argued throughout these proceedings, minutes could be open for inspection to the public and not posted.  Moreover, assuming a charter violation, plaintiffs have cited no authority that this would be a ground to invalidate an action by the city council.  Indeed, that same section provides that "[e]very ordinance

-13-

and resolution shall be adopted or passed by the affirmative vote of four members of the council."[12] Grosse Pointe Charter, § 27. Thus, it is the affirmative vote of four members of the council that authorizes an action, not the city clerk's signature.

In Count VII, plaintiffs alleged that defendants violated the OMA by not approving the minutes of the April 20, 2020 meeting at its next meeting on May 11, 2020. Plaintiffs cited MCL 15.269(1) for the proposition that meeting minutes must be approved at the next meeting of the public body. MCL 15.269(1) provides:

> Each public body shall keep minutes of each meeting showing the date, time, place, members present, members absent, any decisions made at a meeting open to the public, and the purpose or purposes for which a closed session is held. The minutes shall include all roll call votes taken at the meeting. The public body shall make any corrections in the minutes at the next meeting after the meeting to which the minutes refer. The public body shall make corrected minutes available at or before the next subsequent meeting after correction. The corrected minutes shall show both the original entry and the correction.

This section of the OMA reveals that there is no requirement that minutes be approved at the public body's next meeting. The requirement that plaintiffs ostensibly rely on pertains to *corrections* to minutes and states that a "public body shall make any *corrections* in the minutes at the next meeting after the meeting to which the minutes refer." (Emphasis added.) But this is not the same as requiring minutes be *approved* at the public body's next meeting. Therefore, the trial court properly granted summary disposition on this count pursuant to MCR 2.116(C)(8).[13]

Plaintiffs alleged in Count X that defendants did not comply with the procedures outlined in the local ordinances. In particular, plaintiffs alleged that the city council could only have reconsidered its April 20, 2020 decision to deny the lot split at its next meeting on May 11, 2020, and because the city council did not reconsider its decision at the May 11 meeting, it could not do so at the May 18 meeting. Similarly, plaintiffs alleged that because reconsideration was no longer an option after May 11, a new application—which was never submitted—was needed to bring the issue before the city council.

In support, plaintiffs generally cited §§ 70-10, 70-11, and 70-12 of the Grosse Pointe Ordinances. But a review of those ordinances reveals no limitation on when the city council can reconsider a decision on an application to split a lot. Grosse Pointe Ordinances, § 70-10 is titled "Variations and exceptions" and states:

---

[12] And more specifically for lot splits, Grosse Pointe Ordinances, § 70-11(g) provides that "[a] two-thirds vote of all members of the city council is required to adopt a resolution approving the lot split."

[13] The trial court granted the motion respecting this count because any violation was "*de minimis*" and not intentional. We will affirm if the trial court reached the correct result, albeit for a different reason. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

-14-

Whenever the strict enforcement of the regulations in this chapter would entail unusual, real and substantial difficulties or hardships, the city council may vary or modify them in such a way that the subdivider is allowed to plan and develop his property and record a plat of it without unjust difficulties and expense, but at the same time the public welfare and interests of the city must be fully protected and the general intent and spirit of this chapter preserved.

Grosse Pointe Ordinances, § 70-11 is titled "Lot splits" and provides:

(a) No lot, outlot or other parcel of land in a recorded plat shall be further partitioned or divided unless it is in conformity with the provisions set forth in this section.

(b) The owner of a platted lot who wishes to split the lot, or his agent, shall submit to the city manager six copies of the owner's application for lot split at least 30 days prior to the next regularly scheduled city council meeting at which time the application is proposed to be acted upon. A drawing of the proposed lot split, including adjacent platted lots and properties within 200 feet, shall be included with the application and be prepared by a registered civil engineer or registered land surveyor and be drawn to scale.

(c) The lot split drawing shall contain the following information:

(1) Names and addresses of the owners and engineer or surveyor.

(2) Date, north arrow and scale, written and graphic.

(3) Names and addresses of the owners of the abutting property, including owners across the street from the proposed split lots and abutting lots.

(4) Street names, right-of-way and roadway widths of all existing and proposed streets within and adjacent to the proposed lot splits.

(5) Proposed and existing storm and sanitary sewers and water mains including locations and size.

(6) All existing structures and other physical features which would influence the layout and design of the lot split.

(7) Location, width and purpose of existing and proposed easements.

(8) Existing and proposed lot lines and lot numbers.

(d) The city manager shall transmit a copy of the application for lot split to the city planner, building inspector and city assessor for review and comment.

(e)  Upon receipt of recommendations from the city planner, building inspector and city assessor, the city manager shall set the date and time for the public hearing at which the application shall be acted upon.

(f)  Notice of hearing shall be given in accordance with provisions of section 1-14.

(g)  The application for lot split shall be considered by the city council at the scheduled public hearing.  Amendments to the application may also be considered at the hearing.  A two-thirds vote of all members of the city council is required to adopt a resolution approving the lot split.

And Grosse Pointe Ordinances, § 70-12 is titled "Enforcement" and states:

(a)  The building inspector shall not issue building or repair permits for any structure located on a lot in any subdivision the plat of which has not been fully approved and recorded in accordance with the provisions contained in this chapter. No building or repair permit shall be issued for a structure located on a lot in any such subdivision which has been sold or transferred by metes and bounds if the deed for such lot was recorded after the date of the adoption of Ordinance No. 107 (August 21, 1961), unless approved by the city council as provided for in section 70-11.  "Metes and bounds," for the purpose of this section, is a method used to describe a tract of urban land intended to be used for dwelling or other purposes as contrasted with the description of a part of a properly approved and recorded subdivision plat by the lot and block number of the subdivision.

(b)  Any person who sells or attempts to sell a lot in any subdivision by metes and bounds or otherwise, in violation of this chapter, shall be guilty of a violation of this Code and shall be subject to penalties as provided in section 1-13.

Plaintiffs' reliance on §§ 70-10 and 70-12 is puzzling because those seem to have no application at all to a decision to approve a request for a lot split.  And while § 70-11 is relevant, nowhere in that section does it place limitations on when the council can reconsider a previous lot-split decision.  Therefore, plaintiffs failed to state a claim on which relief can be granted, and the trial court properly granted summary disposition on this count.[14]

In Count XI, plaintiffs alleged that defendants violated the OMA by going into closed session on May 11, 2020, and they alleged in Count XII that defendants violated the Grosse Pointe Ordinances by going into the closed session.  As an aside, the trial court's rationale for granting

---

[14] The court granted summary disposition because it determined that there was nothing in the city charter or ordinances allowing a person to sue the city for this purported violation.  The trial court may very well be correct, but the more straightforward analysis shows that, assuming plaintiffs did have standing to bring such a claim, the claim fails because the ordinances do not dictate when the city council can reconsider its decisions.  Again, this Court will affirm if the trial court reached the correct result, albeit for a different reason.  *Gleason*, 256 Mich App at 3.

defendants' motion respecting these two counts is wanting. In its written order, the trial court simply said that those counts were dismissed with prejudice "for the reason stated on the record." But the transcript shows that the court, at least initially, intended to deny the motion on these counts. During the lengthy discussion of Counts XI and XII, the trial court took a recess, so it is possible that some people, if not everyone, lost track of which counts were being discussed. But, according to the discussion, the court indicated that it would deny the motion for summary disposition, which seemingly related to Counts XI and XII. Regardless, it is well established that courts speak through their written orders, *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009), and in its order the trial court did in fact grant summary disposition to defendants on Counts XI and XII. While the reasoning for granting the motion on these counts is absent, that is not an impediment to this Court reviewing the issue because this Court's review is de novo and the issue is a question of law, and we are not required to give deference to the trial court's reasoning. See *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 284; 602 NW2d 854 (1999).

In Count XI, plaintiffs allege that defendants violated the OMA by going into closed session on May 11, 2020, without a proper purpose. This one count contains three aspects. First, plaintiffs alleged that calling a closed session "to review an attorney memorandum subject to attorney client privilege" is inadequate under the OMA. Plaintiffs averred that the pending litigation had to be cited as well. Second, plaintiffs alleged that the removal of the public from Zoom access violated MCL 15.263(6) of the OMA. Third, plaintiffs alleged that defendants did not allow the public to be present or have Zoom access at the conclusion of the meeting.

Regarding the first aspect of this claim, plaintiffs alleged that the closed session was "not called for any purpose allowed by the OMA." Plaintiffs further asserted that only the exception under MCL 15.268 would have allowed defendants to go into a closed session. Plaintiffs' contention, however, is contradicted by the OMA itself. MCL 15.268 allows a public body to meet in a closed session for 12 enumerated reasons. See MCL 15.268(1)(a)-(*l*). Thus, a public body, such as the defendant city council, was not limited to only one of those options. Of relevance to this case are the following permissible reasons for going into a closed session:

> (e) To consult with its attorney regarding trial or settlement strategy in connection with specific pending litigation, but only if an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body.
>
> * * *
>
> (h) To consider material exempt from discussion or disclosure by state or federal statute. [MCL 15.268(1).]

Plaintiffs in the trial court argued that defendants failed to comply with the OMA because they failed to identify the specific pending litigation for entering a closed session under MCL 15.268. See *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 422; 925 NW2d 897 (2018) (holding that for a public body to initiate a closed session under MCL 15.268(e), it must "identify the specific litigation it would be discussing"). In this case, the reason for entering into the closed session was "to review an attorney memorandum subject to attorney client privilege."

-17-

As mentioned earlier, MCL 15.268(1)(e) is not the only permissible reason to enter into a closed session and MCL 15.268(1)(h), on its face, could apply as well because "attorney memorandum subject to attorney client privilege" would qualify as a document exempt from disclosure by the FOIA. MCL 15.243(1)(g). Therefore, the city council would be permitted to enter a closed session under MCL 15.268(1)(h) of the OMA to consider the attorney memorandum.

Relying on *Vermilya*, 325 Mich App 416, and *Herald Co, Inc v Tax Tribunal*, 258 Mich App 78; 669 NW2d 862 (2003), overruled on other grounds by *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125; 860 NW2d 51 (2014), plaintiffs argue that even if MCL 15.268(1)(h) applies, defendants had to provide more detail regarding the document to be reviewed. This Court recently rejected this precise argument. In *Mr Sunshine v Delta College Bd of Trustees*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358042); slip op at 1, lv pending, the defendant public body entered a closed session to consider "a Written Legal Opinion." The plaintiffs argued that under *Herald Co*, the defendant should have been required to identify and describe at the meeting the general nature of the document that was prompting the closed session. *Id*. at ___; slip op at 7. This Court held that the public body is only required to "*describe*" the document and that "indicating the closed session involved a written legal opinion" satisfied this requirement. *Id*. at ___; slip op at 7. In the instant case, the description that the city council gave for going into a closed session, to "review an attorney memorandum subject to attorney client privilege" is similarly sufficient.

As a second aspect of Count XI, plaintiffs alleged that the removal of the public from Zoom access violated MCL 15.263(6) of the OMA. MCL 15.263(6) states that "[a] person must not be excluded from a meeting *otherwise open to the public* except for a breach of the peace actually committed at the meeting." (Emphasis added.) This part of the claim seemingly presumes that it was improper for the city council to enter into a closed session. But as already explained, MCL 15.268(1)(h) permitted the city council to enter into a closed session, which by definition is not open to the public, obviating this aspect of the claim.

For the last aspect of the claim presented in Count XI, plaintiffs alleged that defendants did not allow the public to be present or have Zoom access at the conclusion of the meeting. Defendants in their motion for summary disposition conceded that this in fact happened. But defendants nonetheless argued that there could be no harm because the only event that happened after the closed session was the adjournment of the meeting. No other items were discussed and no other decisions were made.[15] It is not clear what relief plaintiffs are seeking for this purported violation. There is no decision to invalidate (other than the decision to adjourn).

There are three distinct types of relief in the OMA: MCL 15.270(1) permits a person to file a civil action to invalidate a decision of a public body made in violation of the act; MCL

---

[15] The minutes reflect the following:

> The Council met in closed session from 8:06 p.m. to 8:40 p.m. The Council reconvened in open session at 8:41 p.m.

> On Motion, the meeting was adjourned at 8:41 p.m.

15.271(1) allows a person to seek injunctive relief "to compel compliance or to enjoin further noncompliance with [the] act"; and MCL 15.273 permits a plaintiff to file suit against a public official for intentional violations of the OMA. *Speicher*, 497 Mich at 135-136; see also *Leemreis v Sherman Twp*, 273 Mich App 691, 700-701; 731 NW2d 787 (2007). These are separate types of relief that stand alone and do not interact. *Speicher*, 497 Mich at 136; *Leemreis*, 273 Mich App at 701.

For this aspect, plaintiffs do not seek to invalidate any action that occurred during this momentary open session that was not accessible to the public. Indeed, as already mentioned, no decisions or actions were taken, except to adjourn the meeting. Plaintiffs also are not seeking injunctive relief to prevent this from happening again. Lastly, plaintiffs concede that they are not alleging any intentional violation of the OMA. Accordingly, plaintiffs have failed to state a claim upon which relief can be granted, and the trial court properly dismissed this count under MCR 2.116(C)(8).

In plaintiffs' Count XIV, plaintiffs allege that defendants violated the OMA when they issued corrections to the April 20, 2020 minutes without showing the original entry. Plaintiffs further alleged that defendants issued all of the minutes for the April 20, May 11, and May 18 meetings at the same time, which violated the OMA. Plaintiffs' claim is difficult to comprehend. It is clear, however, that they are attempting to invalidate the city council's decision on May 18, 2020, on reconsideration, to approve the lot split of the Washington property.

Actions to invalidate decisions are governed by MCL 15.270. *Speicher*, 497 Mich at 135. While MCL 15.270(1) allows a person to file a civil action to invalidate a decision of a public body, MCL 15.270(2) specifies when a decision may be invalidated. *Id*. MCL 15.270(2) provides:

> A decision made by a public body may be invalidated if the public body has not complied with the requirements of [MCL 15.263(1), (2), and (3)] in making the decision or if failure to give notice in accordance with [MCL 15.265] has interfered with substantial compliance with [MCL 15.263(1), (2), and (3)] and the court finds that the noncompliance or failure has impaired the rights of the public under this act.

MCL 15.263(1), (2), and (3) broadly require that meetings be open to the public. Because plaintiffs' Count XIV does not allege that any meeting was not conducted while open to the public, these subsections are not pertinent. MCL 15.265 pertains to notice of public meetings. But plaintiffs' claim does not allege a lack of notice under this provision. Instead, plaintiffs cite MCL 15.269 and take issue with how certain minutes of meetings were presented, revised, and approved. This falls outside the scope of MCL 15.265. While MCL 15.269 does address how minutes are to be maintained and made available to the public,[16] a violation of this section does not allow for the

---

[16] MCL 15.269 provides:

> (1) Each public body shall keep minutes of each meeting showing the date, time, place, members present, members absent, any decisions made at a meeting open to the public, and the purpose or purposes for which a closed session is held.

-19-

invalidation of a public body's action. See MCL 15.270(2). Consequently, the trial court properly granted summary disposition of this count under MCR 2.116(C)(8).

## B. MCR 2.116(C)(10)—COUNT II

In Count II, which plaintiffs amended in their second amended complaint, they alleged that defendants violated the OMA by failing to make certain minutes of meetings timely available to the public. Specifically, although the count is labeled as only referencing the May 18 minutes, the body of the count alleges the following: (1) the proposed minutes of the May 18 meeting were not made available to the public within the prescribed time, (2) the approved minutes of the February 10 meeting were not made available to the public within the prescribed time, and (3) the approved minutes of the April 20 meeting were not made available to the public within the prescribed time.

Plaintiffs alleged violations of MCL 15.269(3), which states:

> A public body shall make proposed minutes *available for public inspection* within 8 business days after the meeting to which the minutes refer. The public body shall make approved minutes *available for public inspection* within 5 business days after the meeting at which the minutes are approved by the public body. [Emphasis added.]

Defendants moved for summary disposition of this count in their third motion for summary disposition pursuant to MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual

---

The minutes shall include all roll call votes taken at the meeting. The public body shall make any corrections in the minutes at the next meeting after the meeting to which the minutes refer. The public body shall make corrected minutes available at or before the next subsequent meeting after correction. The corrected minutes shall show both the original entry and the correction.

(2) Minutes are public records open to public inspection, and a public body shall make the minutes available at the address designated on posted public notices pursuant to section 4. The public body shall make copies of the minutes available to the public at the reasonable estimated cost for printing and copying.

(3) A public body shall make proposed minutes available for public inspection within 8 business days after the meeting to which the minutes refer. The public body shall make approved minutes available for public inspection within 5 business days after the meeting at which the minutes are approved by the public body.

(4) A public body shall not include in or with its minutes any personally identifiable information that, if released, would prevent the public body from complying with section 444 of subpart 4 of part C of the general education provisions act, 20 USC 1232g, commonly referred to as the family educational rights and privacy act of 1974.

sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A motion under (C)(10) is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

In a motion brought under MCR 2.116(C)(10), the moving party has the burden of supporting its position with evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. Consequently, "[i]f the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363.

In this case, defendants supplied an affidavit of the city clerk, attesting that the proposed May 18 meeting minutes were made available to the public on May 27, which met the eight-business-day requirement because May 27 is seven business days after May 18. Plaintiffs did not file a response or otherwise submit any documentary evidence in rebuttal. Accordingly, the trial court properly granted summary disposition for this aspect of the claim under MCR 2.116(C)(10).

For the second aspect of this count pertaining to the availability of the approved February 10 minutes, defendants cited the portion of the city clerk's affidavit in which she attested that the approved minutes were made available to the public one day after they were approved at the April 20 meeting. Because plaintiffs did not provide any evidence to create a question of fact, the court properly granted summary disposition in favor of defendants. See *id*.

For the final aspect of this count dealing with the availability of the approved minutes of the April 20 meeting, defendants conceded that they were not made available until May 27, which was six business days after they were approved, and therefore, fell outside the five-business-day window of MCL 15.269(3). Defendants, however, argued that this one-day delay is not actionable. Defendants argued that because the public was not prejudiced, this technical violation cannot be used to invalidate a decision of the city council. The trial court did not err by adopting this view.

As discussed herein, the OMA provides for three distinct types of relief: MCL 15.270(1) permits the invalidation of a decision; MCL 15.271(1) allows injunctive relief to address an "ongoing violation"; and MCL 15.273 permits a plaintiff to file suit against a public official for intentional violations of the OMA. *Speicher*, 497 Mich at 135-136, 138. It is clear that with this claim, plaintiffs were attempting to invalidate an action by the city council. Plaintiffs previously had conceded that they were not seeking to hold any individual public officials liable, and plaintiffs' prayer for relief in their second amended complaint did not request any injunctive relief compelling compliance with the OMA.

As already noted, only certain violations of the OMA can be grounds to invalidate a public body's decision. See MCL 15.270(2). Those grounds are limited to whether a meeting was actually open to the public and whether properly noticed for the meeting. See MCL 15.270(2), citing MCL 15.263 and MCL 15.265. A violation involving the timeliness of making minutes

-21-

available to the public implicates MCL 15.269 and is not actionable under MCL 15.270(2). Therefore, the trial court did not err by granting summary disposition in favor of defendants regarding this aspect of plaintiffs' claim.

## C.  MCR 2.116(C)(8)—COUNTS VIII AND XIII

In their amended Count VIII, plaintiffs alleged that defendants violated the OMA by deliberating and making decisions during a meeting closed to the public.  Specifically, plaintiffs alleged that the city council decided to reconsider its April 20, 2020 vote to deny the lot split in secret sometime between the May 11 public session and the May 18 public session.  Defendants sought summary disposition of this count on the ground that reconsideration of the city council's April 20 decision occurred during the open session of the May 18 meeting.[17]  The May 18 meeting minutes reflect that a councilmember had a change of heart and moved for the council to reconsider its prior denial of the lot split.  The council voted 6-0 to reconsider the issue, and before conducting the actual vote on the substantive matter, the public was given an opportunity to comment.  After the close of public comments, the council approved the lot split by the same 6-0 vote.  We agree that because the votes to reconsider the prior decision and the vote to approve the lot split happened during an open meeting, plaintiffs' claim of an OMA violation necessarily fails.

Moreover, assuming defendants had violated the OMA by deciding in private to reconsider the lot-split decision at the future May 18 meeting, the OMA allows for public bodies to ratify decisions that were made at meetings that were not in conformity with the OMA.  *Lockwood v Ellington Twp*, 323 Mich App 392, 404; 917 NW2d 413 (2018), citing MCL 15.270(5).[18]  In short, "a deficiency in the procedure may not render a decision made during a session invalid if the public body duly reenacts and corrects the procedural omission."  *Herald Co*, 258 Mich App at 90.  Therefore, assuming the city council agreed in private to reconsider its previous decision (or even approve the lot split), the later reconsideration and approval of the lot split in the open May 18 session was valid, which defeats any claim regarding the decisions being made in secret.

In their amended Count XIII, plaintiffs alleged that defendants violated the OMA by submitting false and misleading minutes of the May 11 meeting.  The claim is based on the allegation that meeting minutes must be truthful and that the meeting minutes claiming to have

---

[17] The minutes for the May 18 meeting were attached to plaintiffs' second amended complaint, so they are considered part of the pleadings for purposes of MCR 2.116(C)(8).  See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 163; 934 NW2d 665 (2019).

[18] MCL 15.270(5) provides:

> In any case where an action has been initiated to invalidate a decision of a public body on the ground that it was not taken in conformity with the requirements of this act, the public body may, without being deemed to make any admission contrary to its interest, reenact the disputed decision in conformity with this act.  A decision reenacted in this manner shall be effective from the date of reenactment and shall not be declared invalid by reason of a deficiency in the procedure used for its initial enactment.

"reconvened in open session at 8:41 p.m." is false because the public was not allowed to participate after the closed session ended. Defendants sought summary disposition under MCR 2.116(C)(8) on this claim, arguing that, accepting the allegations as true, plaintiffs were not entitled to any relief under the OMA.

Once again, the OMA provides for three different types of relief: invalidation of a "decision," injunctive relief for an "ongoing violation," and monetary damages against individuals for intentional violations. *Speicher*, 497 Mich at 135-136, 138. Plaintiffs' complaint does not seek any of these respecting this count.

First, no decision was made after the city council returned from its closed session, except to adjourn the meeting. Aside from plaintiffs not requesting that the adjournment decision be invalidated, invalidating that decision would be nonsensical. In any event, the decision to adjourn does not appear to be a "decision" under the OMA. MCL 15.262(d) defines "decision" as "a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required *and by which a public body effectuates or formulates public policy*." (Emphasis added.) The choice to adjourn or end a meeting does not effectuate or formulate public policy. Second, plaintiffs are not seeking injunctive relief for any OMA violation, and the single occurrence of having a momentary open session unavailable to the public does not constitute an "ongoing violation." Third, plaintiffs are not seeking to hold any individual public official liable for committing any intentional violation of the OMA. Therefore, plaintiffs failed to state a claim upon which relief can be granted, and the trial court properly granted defendants' motion for summary disposition of Count XIII.

## V. GOVERNMENTAL IMMUNITY

Plaintiffs also aver that defendants cannot invoke the immunity available under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. Because we have determined that the trial court properly granted summary disposition on all counts on other grounds, we need not address whether the GTLA also barred any of plaintiffs' claims.

Affirmed.

/s/ Sima G. Patel
/s/ Mark J. Cavanagh
/s/ James Robert Redford

-23-